T.C. Memo. 1996-39


UNITED STATES TAX COURT


TOLBERT S. WILKINSON AND SUZANNE T. WILKINSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14862-93.                    Filed February 1, 1996.


<u>Irwin D. Zucker</u>, for petitioners.

<u>Gerald L. Brantley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KÖRNER, <u>Judge</u>:  Respondent determined deficiencies and penalties with respect to petitioners' Federal income taxes for the years and in the amounts as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 1989 | $36,896 | $7,379 |
| 1990 | 31,212 | 6,242 |

All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

The issues for decision are: (1) Whether petitioners' medical corporation and ranching activity should be considered as one activity for purposes of section 183; (2) whether petitioners were engaged in their ranching activity with the objective of making a profit for purposes of section 183; and (3) whether petitioners are liable for the accuracy-related penalty for a substantial understatement of income tax under section 6662(a) and (b)(2).

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Respondent objects to the admission of the third supplement to the stipulations of facts, and the exhibits attached thereto, alleging that petitioners did not timely submit the exhibits contained therein, thereby preventing respondent from using the information contained within the documents for impeachment purposes at trial. Respondent had agreed to one extension of the submission deadline established by the pretrial order, yet petitioners did not provide the documents by this deadline. The exhibits consist of copies of bills and canceled checks. At trial, respondent stipulated their

authenticity. Petitioner seeks to introduce the exhibits to show that the records were kept, and that these were the records, but not necessarily that these records were correct or accurate. The admission of these documents for that limited purpose will not prejudice respondent, and accordingly the objection is overruled. Petitioners resided in San Antonio, Texas, at the time the petition was filed, and filed joint income tax returns for the years in issue. References to petitioner are to Tolbert S. Wilkinson.

Petitioner was a plastic surgeon employed by the Institute for Aesthetic Plastic Surgery (the Institute), a corporation wholly owned by petitioner in the years in issue. Petitioner wife is also employed by the Institute. Petitioner received his undergraduate degree from Wake Forest University, graduated from Duke University Medical School in 1962, and has practiced in the field of surgery. Petitioner has no formal education in agriculture, horses, cattle, or farming/ranching-related activities.

Petitioner has been involved with horses in different capacities since the mid-1970's. Petitioner became involved in polo in the early 1980's. The Retama Polo Center near San Antonio attracted petitioner because it hosted numerous large social events which garnered a great deal of publicity. Petitioner concluded early in his career that because his services were elective, there was a limited clientele who could

afford them, and he believed those involved in equestrian activities, traditionally an activity of the wealthy, would be a source of patients for him.

Initially, in some years prior to those before us, petitioner kept horses at an independent ranch. Petitioner began looking for land to purchase to start his own ranch, to avoid paying the fees to the independent ranch, and to facilitate breeding. Petitioner intended to retire to the ranch and possibly open a small family practice, or in the alternative to sell the ranch upon retirement. He stated at trial that a horse ranch would allow him to occupy himself with something about which he had some know-how, a statement that may have startled some of his patients.

On March 31, 1987, petitioners purchased 52 acres in Bandera County, Texas, for $287,250. On October 7, 1988, petitioners purchased 50-acre and 10-acre pieces of property in Bandera County, Texas, each for $105,000. The total cost basis in the properties (considered as a whole) was $497,250.

At the end of 1988, petitioners hired a Mr. White to live on the ranch and act as foreman. Petitioner initially bought and sold horses, and later added the training and breeding of horses, a cattle business, a hay business, deer and goat operations, a general store, and guest accommodations.

Petitioner considered that polo ponies could sell for as much as $20,000, but he aimed to sell them in the $5,000 to $6,000 range. Petitioner targeted new polo players as customers;

he sold four horses between 1987 and 1992 at an average of approximately $2,400 per horse. Petitioner's primary sources of ponies were area dude ranches, which would periodically bring a group of ponies to the ranch for petitioner to ride and try out. Petitioner would then purchase the ponies he thought had potential. Petitioner considered that it would then take as many as 6 years to train them. To showcase the ponies for sale, he would ride them at polo matches.

Petitioner played polo, rode and trained the polo ponies in part, and hosted various social gatherings at the ranch. Petitioner enjoyed training and riding the polo ponies, and on one occasion stated that it was wonderful to get on a horse after a long day of surgery. The social gatherings often received publicity; petitioner considered that this type of publicity would attract clients to the medical corporation. Petitioner was a contributing editor of Polo magazine, which periodically printed articles by petitioner, as well as his picture and address.

Petitioners spent on average 3 weekends per month at the ranch, as well as some weekday evenings. Mr. White saw to the day-to-day affairs of the ranch, but deferred to petitioner for any major decisions. Petitioner kept some records and paid bills. The records shown to the Court consisted of some receipts and canceled checks, handwritten logs kept since 1987, and typed summaries prepared by petitioner for each year. The logs contained one or two pages for each month, and listed

expenditures and the method of payment--for instance, a charge at a gas station or a cash payment to a veterinarian. Petitioner made summaries from the logs that he used to gauge operations, and they were also used to prepare the tax returns. At the end of the year, the summaries were given to the tax return preparer. The parties herein agreed in writing that the contents of certain stipulated documents relating to the ranch were the authentic documents that were kept, but they were not stipulated to be accurate. The summaries were not always accurate or complete.

Petitioner maintained records of purchase and registration documents for many of the horses and longhorn cattle that were sold. Petitioner did not introduce contemporaneously made records of sales of the ponies. Petitioner introduced no records regarding contract labor, nor did he issue Forms 1099 or W-2 to such employees, although such forms were maintained by the medical corporation, which paid petitioners their salaries and hired a payroll company.

There was a small amount of gross income from various activities at the ranch. Although there were few horse sales, there were various other sales of cows, calves, rabbits, goats, and bulls. Petitioner leased "Bryan the Buffalo" in 1988 and 1989 for a total of $969. Finally, there was some rental income from the guest cabins located on the ranch. Petitioners reported the following losses and income on their joint returns for the years 1986 through 1992:

Petitioner's
Gross Income From

| Year | Farm Expenses | Farm Losses | Farm Gross Income | Medical Corp. |
|------|---------------|-------------|-------------------|---------------|
| 1986 | $47,698 | $50,598 | ($2,900) | $370,056 |
| 1987 | 79,230 | 78,430 | 800 | 646,554 |
| 1988 | 109,216 | 109,216 | 0 | 497,333 |
| 1989 | 141,857 | 135,742 | 6,115 | 479,500 |
| 1990 | 132,987 | 117,420 | 15,567 | 498,521 |
| 1991 | 137,882 | 121,857 | 16,025 | 540,258 |
| 1992 | 119,934 | 103,196 | 16,738 | 232,942 |
| Total | 768,804 | 716,459 | 52,345 | 3,265,164 |

The negative farm gross income in 1986 was the result of a reported loss on the sale of a horse. Some of the farm expenses claimed from 1986 through 1992 are as follows:

| Year | Depreciation | Mortgage Interest | Taxes | Labor | Feed | Repairs/ Maintenance |
|------|--------------|-------------------|-------|-------|------|----------------------|
| 1986 | $2,915 | -- | -- | -- | -- | -- |
| 1987 | 7,815 | $14,074 | $1,305 | $1,183 | $7,509 | -- |
| 1988 | 24,627 | 21,461 | 1,787 | 15,692 | 11,285 | $696 |
| 1989 | 24,966 | 28,372 | 1,582 | 20,161 | 16,338 | 6,273 |
| 1990 | 26,024 | 27,583 | 297 | 19,427 | 11,379 | 14,667 |
| 1991 | 25,497 | 22,960 | 1,537 | 21,999 | 15,291 | 15,092 |
| 1992 | 27,065 | 24,470 | 2,076 | 24,845 | 9,601 | 7,614 |

OPINION

A. Relationship Between Petitioners' Ranching Activity and Their Medical Corporation

Petitioner claims that he participated in polo as a means of obtaining clients, and that therefore the ranching activity and the medical corporation should be considered as one activity for purposes of determining the overall profitability of the ranch. Respondent contends that the two activities are separate for purposes of section 183.

Petitioners argue that under Campbell v. Commissioner, 868 F.2d 833 (6th Cir. 1989), affg. in part and revg. in part T.C. Memo. 1986-569, the entire economic relationship and its consequences should be examined to determine whether there is an actual profit objective. In the Campbell case, the court held that a taxpayer could deduct losses from a partnership where the partnership's only business purpose was to lease an airplane to a corporation controlled by the partners of the partnership. Despite repeated losses, the court found a profit motive by considering the increase of overall wealth of the partners through the corporation. Petitioners also cite Cornfeld v. Commissioner, 797 F.2d 1049 (D.C. Cir. 1986), revg. and remanding T.C. Memo. 1984-105; Horner v. Commissioner, 35 T.C. 231 (1960); and Louismet v. Commissioner, T.C. Memo. 1982-294.

Petitioners' reliance on these cases is inappropriate. In De Mendoza v. Commissioner, T.C. Memo. 1994-314, we distinguished Campbell v. Commissioner, supra, from facts very similar to those before us, as the latter case did not consider whether two activities could be considered one for purposes of section 183, but rather it considered whether a profit motive for one activity could be derived from the income and profit motive of a related corporation. In Campbell, the plane leasing partnership was conducted solely to benefit another business, and was wholly dependent on that business, while in De Mendoza the polo activity was in no way dependent on the legal activity. The facts of De

Mendoza are very similar to those before us today. The taxpayer in that case was an attorney who claimed that his polo activity was conducted to obtain clients. We found that any benefit to the legal practice from the polo activity was at best incidental.

We make a similar holding today. Petitioner has failed to establish any correlation between the ranching activity and the medical corporation. We think it is significant that the three parcels of land making up petitioners' farm or ranch were purchased separately by them, were apparently never conveyed to the Institute to augment its assets, nor merged into the Institute's accounts, and the losses therefrom were claimed in petitioners' tax returns as a deduction, without reference to the Institute. The only connection between petitioner's ranch activity and the medical practice of the Institute was the rather vague assertion by petitioner that the publicity he derived from playing polo helped him get patients for his cosmetic surgery. Such argument was not supported by any patient of petitioner or by any other witness or evidence herein. To us, it is at least as far fetched and unconvincing as was the alleged connection between a legal practice and polo in De Mendoza v. Commissioner, supra.

B.  The Conduct of the Ranch for Profit

We must decide whether petitioners conducted their ranching and ranching-related activities with a profit objective for the 1989 and 1990 tax years. To meet his burden, Rule 142(a),

petitioner must establish that there was an activity which was engaged in for profit within the meaning of section 183. Section 183(a) limits any deductions attributable to an activity of a taxpayer not engaged in for profit except as provided in section 183(b). Section 183(b) provides that a deduction may be taken where the taxpayer is not engaged in an activity for profit where a deduction is otherwise allowable, to the extent that the gross income from such activity exceeds the claimed deductions. Section 183(c) defines an activity not engaged in for profit as any with respect to which deductions would not be allowed under section 162 or under paragraph (1) or (2) of section 212.

Expenses incurred in carrying on a trade or business are allowable under section 162 if they are ordinary and necessary to the conduct of that trade or business. Antonides v. Commissioner, 91 T.C. 686, 693 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Section 212 allows deductions for expenses incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

An activity will be considered as conducted for profit if the facts and circumstances indicate the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Antonides v. Commissioner, supra; Dreicer v Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v.

Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). There is no requirement that a reasonable expectation of profit exist. Elliot v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). A taxpayer's mere statement of intent to make a profit is not controlling; rather, the objective facts must be examined, and greater weight will be given to these, rather than a mere statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a) and (b), Income Tax. Regs. Petitioner bears the burden of proving that he had a profit objective. Rule 142(a); Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

Section 1.183-2(b), Income Tax Regs., provides nine factors to be considered in determining whether an activity is engaged in for profit. They are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation that may be present. No single factor is controlling. Abramson v. Commissioner, 86

T.C. 360, 371 (1986).  We will consider these factors separately in this case.

1.  <u>The Manner in Which the Ranching Activities Were</u> <u>Conducted</u>

Maintaining complete and accurate books and records may indicate that the activity is engaged in for profit.  <u>Elliot v.</u> <u>Commissioner</u>, <u>supra</u> at 971-972; sec. 1.183-2(b)(1), Income Tax Regs.  Respondent contends that the records kept here were inaccurate, contained omissions, and did not disclose the most rudimentary information a prospective purchaser would want in purchasing horses.  Petitioner argues that the records were adequate, that from them the C.P.A. was able to prepare petitioners' tax returns, and that they were able to assess profitability and respond accordingly.

The records consisted of handwritten logs kept since 1987 and typed summaries for each year.  The logs contain one or two pages for each month, and list expenditures and the method of payment--for instance, a charge at a gas station or cash to a veterinarian.  At the end of the logs are summaries.  The summaries may not have always been accurate or complete, but may have provided at best a rough picture of the profitability of the ranch.  We cannot judge how accurate or complete they were in this case; they were accepted into evidence solely for showing that petitioner kept some kind of records, not for the purpose of

proving their contents, and petitioner testified about them only in the most vague and general fashion.

Abandonment of unprofitable methods, a change in operating methods, or the adoption of new techniques to improve profitability may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Respondent argues that petitioner did not reduce expenses, while petitioner claims to have adopted methods designed to reduce expenses. For instance, after analyzing the summaries prepared, petitioner says he realized that he should expand his operations to improve profitability. Petitioner added cattle, exotic goat, and guest ranch operations, he hired Mr. White to live on the ranch and act as foreman, and he purchased land for hay production. The hay operation was designed to reduce expenses, while the others were designed to increase revenue. Even if the expenditures petitioners sought to reduce were in fact reduced, the ranch would not have become profitable. Two of the most significant expenses reported each year were mortgage interest and depreciation. Nothing short of significant revenue increases would have made the venture profitable in light of these significant expenses, and though the added activities may have raised revenue slightly, they also caused an increase in expenses. Although we believe that petitioner had a business plan to expand operations, the facts indicate that such expansion did not constitute a plausible plan

to increase profitability.  See <u>De Mendoza v. Commissioner</u>, T.C. Memo. 1994-314.  This factor favors respondent.

2.  <u>Expertise of Petitioner or His Advisers</u>

Preparing to enter into an activity by consulting with experts or extensive study may indicate that a taxpayer has a profit objective.  Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner has no formal schooling in agriculture or equestrian activities.  His participation in equestrian activities began during the 1970's, while his participation in polo began around 1984.  Petitioner was very involved in the polo community, and was even a contributing editor for Polo magazine. Although we believe he was quite knowledgeable as to polo, or even equestrian affairs, we do not feel that he was an expert in making equestrian affairs profitable, and it does not appear that he had any experience or expertise in the cattle, other animals, hay, or guest quarters business.  Petitioners have failed to establish that they sought expert advice to make the ranch profitable.  This factor favors respondent.

3.  <u>The Time and Effort Expended by Petitioner</u>

A devotion of a great deal of a taxpayer's personal time to an activity, especially where there is no recreational element, may indicate a profit objective, and the fact that only a limited amount of time is so devoted does not necessarily give rise to a contrary indication.  Sec. 1.183-2(b)(3), Income Tax Regs.

Petitioners were employed full time by the medical corporation, and accordingly spent only weekends and some evenings at the ranch. Petitioner may have not allowed polo to interfere with his surgery schedule, and there was also an obvious recreational element to time spent at the ranch.

The fact that taxpayers devote a limited amount of time to an activity may not indicate a lack of profit objective where the taxpayers utilize the services of qualified persons to conduct the activity. Cornfeld v. Commissioner, 797 F.2d at 1052; De Mendoza v. Commissioner, supra; sec. 1.183-2(b)(3), Income Tax Regs. Petitioners hired Mr. White, who acted as a full-time ranch supervisor. His duties were broad, but it was clear to us that he managed the day-to-day activities of the ranch. This factor favors petitioner.

4. Expectation of Appreciation in Value

An expectation that the appreciation of assets used in an activity will produce an overall profit when netted against the losses from that activity may indicate a profit objective. Sec. 1.183-2(b)(4), Income Tax Regs. There is no outright requirement that any appreciation offset the aggregate losses, but there must be a bona fide expectation that appreciation will produce a profit at some time in the future. See Allen v. Commissioner, 72 T.C. 28, 36 (1979); Engdahl v. Commissioner, 72 T.C. 659, 668 (1979). Additionally, section 1.183-1(d)(1), Income Tax Regs., provides that the possible increase in the value of land used in

a farming activity should be considered only if the income from the farming activity exceeds the carrying cost of the land. The carrying cost of the land includes the mortgage interest and taxes. LaMusqa v. Commissioner, T.C. Memo. 1982-742.

After purchasing the ranch, petitioner says he caused fences to be erected and roads and buildings to be built, and made various other improvements. Neither the fact nor the amount of such improvements was established. Petitioners intended to one day retire, live on the ranch, and open a small medical practice. Petitioner stated that the ranch would give him something to do. We doubt that petitioners in fact expected that any appreciation would ever produce an overall profit; no credible evidence to that effect was presented here. Each year from 1987 through 1992, the ranch produced losses of over $100,000. We infer that the losses incurred each year simply outpaced any appreciation. Furthermore, the mortgage interest deductions claimed from 1986 through 1992 totaled $138,920, and the taxes paid for that period totaled $8,584; the gross income from the ranching activity totaled only $52,345. Because the income from the ranch does not exceed the carrying cost of the land, any potential appreciation of the ranch cannot be considered. At all events, petitioners did not prove that any of the ranch assets could be expected to appreciate to any significant extent. This factor favors respondent.

   5. Petitioner's Success in Other Activities

A taxpayer's involvement in similar activities in the past, especially where he has converted them from unprofitable to profitable operations, may indicate a profit objective, despite a currently unprofitable activity. Sec. 1.183-2(b)(5), Income Tax Regs. There is no evidence that petitioner has ever operated a ranch before, nor that he has had any profit from any ranching, farming, or guest cottage activities. This factor favors respondent.

6. Petitioner's History of Income or Losses

Neither startup losses nor losses that result from unforeseen circumstances necessarily show that the taxpayer lacked a profit objective. Engdahl v. Commissioner, supra at 669; sec. 1.183-2(b)(6), Income Tax Regs. However, losses incurred over many years with little likelihood of future profits indicate a lack of profit objective. Golanty v. Commissioner, 72 T.C. at 426.

Since its inception and through 1992, petitioners have consistently reported significant expenses and negligible gross income, thus producing losses from the ranching activity. The expenses claimed for the years the parties considered (1986-92) total $768,804, while the total income over the same period was only $52,345. Petitioner argues that considerable expenditures were incurred getting the ranch in working order, buying and training the horses, and that the return for these expenditures would not be seen until several years later. We are not

persuaded by this argument.  To the contrary, in the formative years, which were 1986 and 1987, petitioner reported losses of $50,598 and $78,430.  In 1988, the losses grew to $109,216, with a high in 1989 of $135,742.  Although it is true that the gross income of the ranch did grow to $15,567, $16,025, and $16,738 during the years 1990 through 1992, respectively, we find that petitioner has failed to establish that there was any likelihood of making the ranch profitable, and even more unlikely that petitioner would ever recoup his total losses through 1992, which were $716,459.  See De Mendoza v. Commissioner, T.C. Memo. 1994-314.

7.  The Amount of Occasional Profits, If Any

Analysis of the amount of profit earned, especially in relation to the losses incurred, the value of the investment, and the value of the assets involved may be helpful in determining profit objective.  An occasional small profit from an activity that generates otherwise consistently large losses may not be determinative that the activity is conducted with a profit objective, while an occasional substantial profit may indicate a profit objective, especially where the losses or investment are small.  Sec. 1.183-2(b)(7), Income Tax Regs.  Since its inception, petitioners have never earned a profit from their ranching activity.  This factor favors respondent.

8.  Financial Status of Petitioner

Substantial income from other activities, particularly where the losses from the activity produce a tax benefit, may indicate a lack of profit objective.  Sec. 1.183-2(b)(8), Income Tax Regs. Petitioners reported gross income from the medical corporation of $479,500 and $498,521 for 1989 and 1990, respectively, while the farm losses for those years were $135,742 and $117,420.  There was no convincing reason to combine the two activities other than to save taxes.  This factor favors respondent.

9.  <u>Elements of Personal Pleasure or Recreation</u>

The presence of recreational elements may indicate that an activity is not engaged in for profit, although the mere fact that personal pleasure is derived will not be sufficient to cause the activity to be classified as not engaged in for profit if other factors indicate that the activity was in fact engaged in for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.  Petitioner admits that he enjoys his work on the ranch, as well as training and riding polo ponies, but he argues that if he wanted the ranch for purely recreational purposes, he could have built a more elaborate ranch with more frills, as opposed to a working ranch. We think that the fact he could have built a ranch with more frills does not negate the recreational quality present.  This factor favors respondent.

_____

Of the nine factors discussed above, only one factor favored petitioner.  Additionally, the objective facts presented to this

Court indicate that petitioners did not have an actual and honest objective to make a profit by continuing the ranching activity. We hold that petitioners have failed to prove that respondent's determination was in error.

C.  Section 6662(a)--Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a penalty of 20 percent of any part of the underpayment attributable to a substantial understatement of income tax.  The understatement is substantial if it exceeds the greater of 10 percent of the proper tax or $5,000.  Sec. 6662(d)(1)(A).  The penalty will be reduced for any portion for which there was substantial authority for the position of the taxpayer, or where the relevant facts affecting the treatment of the item were adequately disclosed on the return.  Sec. 6662(d)(2)(B).

The standard for determining whether there is in fact substantial authority for a position is whether the weight of the authorities supporting that position is substantial in relation to the weight of authorities supporting contrary positions. Schirmer v. Commissioner, 89 T.C. 277, 283 (1987); sec. 1.6661-3, Income Tax Regs.  On brief, petitioners referred to sections 162 and 183, which they assert allow for deductions for ordinary and necessary business expenses.  They also point out that the Service has never challenged their business intent in prior years, despite similar positions, and therefore their reliance on the Service's position is warranted.

The regulations specifically provide that the possibility that an item will not be raised on audit, or that there will be no audit, is not relevant in determining whether there is substantial authority. Sec. 1.6662-4(d)(2), Income Tax Regs. Petitioners' reliance on respondent's prior inaction is unwarranted. Petitioners did not cite any authority to bolster their assertions that there was substantial authority for their returns, and we find none.

Petitioners point to Rev. Proc. 90-16, 1990-1 C.B. 477, which describes what constitutes adequate disclosure for certain items. Unfortunately, these less stringent requirements are only applicable to the specific items enumerated in that revenue procedure. Because none of those items were claimed by petitioners, here the revenue procedure provides no assistance for them. The disclosure must enable the Service to identify the potential controversy involved. <u>Schirmer v. Commissioner</u>, <u>supra</u> at 286 (citing S. Rept. 97-494 (Vol. 1), at 274 (1982)).

Petitioners did not attach a Form 8275 to their return, nor did they attach a statement that identified itself as a disclosure under section 6661. The requirement of adequate disclosure is not satisfied merely by listing the deductions on Schedule F attached to the tax return, and therefore we find that there was no adequate disclosure.

If there was reasonable cause for the underpayment, and the taxpayer acted in good faith, the penalty will not be imposed.

Secs. 6662(d)(2)(b), 6664(c)(1). Whether a taxpayer acted in good faith depends upon the pertinent facts and circumstances. Estate of Monroe v. Commissioner, 104 T.C. 352, 366 (1995); sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Cf. Beard v. Commissioner, T.C. Memo. 1995-41; sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners have not impressed upon this Court that there was reasonable cause or basis for the underpayment, or that they adequately sought to determine their proper tax liability. We find in favor of respondent.

Decision will be entered

for respondent.