T.C. Memo. 2005-166

UNITED STATES TAX COURT

FRED MISKO, JR. AND KAREN L. HOWE-MISKO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12996-03.              Filed July 6, 2005.

<u>W. John Glancy</u> and <u>Robert E. Davis</u>, for petitioners.

<u>Kathryn F. Patterson</u> and <u>Abbey B. Garber</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioners'[1] Federal income taxes for 1998 and 1999 based on
disallowing business expense deductions that petitioner claimed

_____

[1]Petitioner Karen Howe-Misko was not involved in petitioner
Fred Misko's law practice, nor was she involved in leasing
equipment to his law practice.  All references to petitioner are
to Fred Misko.

for equipment he purchased and leased to his wholly owned professional corporation, Fred Misko, P.C. (the law firm).

The issues for decision are whether petitioner was engaged in an equipment leasing activity for profit under section 183,[2] and whether the section 469 passive activity rules limit his depreciation deductions.  We find that petitioner engaged in the activity for profit.  To determine whether the passive activity rules limit petitioner's depreciation deductions, we must decide whether petitioner qualifies for the incidental activity exception to the passive loss rules.  We find that petitioner qualifies.

## FINDINGS OF FACT

The parties have stipulated some facts.  The stipulation of facts and the accompanying exhibits are incorporated by this reference and are so found.

Petitioner was a trial lawyer during the years at issue, practicing in Dallas, Texas, through the law firm.[3]  Petitioner has had a highly successful and varied practice throughout his 35-plus-year legal career.  When petitioner first began his law practice, he managed about 100 cases a year, almost exclusively

---

[2]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[3]The professional corporation was a closely held personal services corporation subject to the provisions of subch. C.

on behalf of plaintiffs in personal injury actions.  Beginning in the 1980s, however, petitioner shifted his focus to a more specialized law practice, class actions.  Petitioner has been very successful in this endeavor.

A class-action-based legal practice is unique in several ways.  Since petitioner began focusing on class actions, his case volume has been smaller, the number of plaintiffs has been significantly higher, the cases have been more complex, and his income has increased and become more variable.  For example, petitioner earned $7 million in 1996, but little to nothing from 1997 through 1999.  In 1998, petitioner had a $1.6 million loss, and he earned only a small income in 1999.  In 2000, however, petitioner earned over $6 million when a case he had expected to close earlier finally closed.

Class action cases also require a huge investment, in time and money, including traveling abroad, deposing hundreds of potential claimants, soliciting expensive experts, hiring highly skilled personnel, purchasing expensive technical equipment, and partnering with other law firms.  At one point, petitioner hired approximately 80 people and situated them on the entire floor of a modern office building.  In another case, which has been ongoing for 13 years, petitioner has been representing some 26,000 banana workers from around the world who allegedly were exposed to a toxic chemical rendering them sterile.  Petitioner

is in a consortium of more than a dozen law firms to manage and litigate that case. Petitioner finances his cases by investing an amount personally and then supplementing the remainder with loans from a bank with which he has had a 15-plus-year working relationship.

Overall, it often takes longer to settle class action cases, because of their complexity and the large number of class members. Predicting when a given case might settle, therefore, is an imprecise art.

The issue in this case comes from the manner in which petitioner financially operated his law practice. Each year petitioner would sit down with his accountant, determine his salary after expenses, and reinvest most of his after-tax salary into the law firm.[4] In the 1980s, petitioner's salary began to substantially increase, and finally, in 1991, he made his first $1 million salary. Petitioner testified that this prompted him to reassess his tax posture to determine whether he might appropriately minimize his tax burden. His accountant recommended the leasing arrangement at issue.

Petitioner's accountant said that if petitioner owned the corporate equipment individually and leased it to the law firm, he could lower his Medicare tax. Petitioner paid 3 percent in

---

[4]Petitioner reinvests his salary in the form of a loan, and the law firm pays him interest at 6 percent.

Medicare tax on his wage income yearly. Medicare tax, unlike other payroll taxes, is not capped. The idea was that if petitioner could reduce his wage income and convert some portion to lease payments instead, he could reduce his overall tax burden.

Even though petitioner stated that he was legally entitled to lower his taxes, he was adamant about doing so in an appropriate and legal manner. The leasing arrangement was ideal for petitioner, because it was not merely a tax avoidance vehicle; rather, he would earn a return on the equipment, and he expected the venture to be profitable.

Moreover, petitioner specialized in the use of the leased equipment in a class action setting. It was a point of pride with petitioner that he have the most modern computer graphics and videotape equipment. He wrote articles and delivered lectures throughout the United States on the use of technology in practicing law, particularly in the use of video reenactments, videotape settlement brochures, and videotape mock trials. His lectures would address the kinds of equipment to purchase, what prices to pay, and the level of skill required of employees to operate the equipment. To illustrate the complexity of the video reenactments, petitioner testified that in one instance the law firm charged over $80,000 for an elaborate recreation of a fiery

truck crash.  Petitioner's technical savvy served as a useful marketing edge in soliciting new work.

Petitioner first began the leasing arrangement in 1992 by assigning law firm equipment to himself and leasing it to the law firm.  He then purchased all future equipment personally and leased it to the law firm.  The equipment petitioner leased to the law firm consisted of computers, video equipment, and office furniture.[5]  The original cost of the equipment used in the years at issue was $1,840,157.  From 1992 through 1997, petitioner received rental payments from the law firm totaling $1,040,000.

Petitioner intended to receive an amount in rent generally commensurate with the yearly depreciation deduction.  During the years at issue, however, the law firm experienced a loss, and the law firm made no rental payments.  Nor did the firm pay petitioner a salary in those years.  The losses during those years were attributable to a case that petitioner had expected to close but that took until 2000 to close.  Ultimately, petitioner's leasing activity did not prove profitable, principally because of the losses during the years at issue, and he later sold the equipment to the law firm at book value for $557,885.  The law firm paid petitioner by increasing the amount it owed him.

---

[5]The value of the office furniture was a small fraction of the value of the assets he leased to the law firm.

Petitioner generally took depreciation deductions on the equipment he leased the law firm using the modified accelerated cost recovery system under section 168.  Respondent denied the deductions only in 1998 and 1999, years in which petitioner experienced losses.  Respondent argued that the leasing activity losses were passive and not deductible without passive income.  Respondent later asserted, in an amended answer, that the deductions should be denied because petitioner was not engaged in the equipment leasing activity for profit.  Petitioner objected and argued that he held the equipment for profit and that the leasing activity was a nonrental activity in which he materially participated.

Respondent issued petitioners a deficiency notice on May 15, 2003, in which respondent determined deficiencies in petitioners' Federal income taxes of $74,370 for 1998 and $66,379 for 1999.  Petitioners filed a timely petition.

                              OPINION

The issues to be decided are, first, whether petitioner's equipment leasing activity was engaged in for profit under section 183, and second, whether the equipment leasing activity qualifies for the incidental activity exception under section 469.[6]

---

[6]The Commissioner's determinations in a deficiency notice are generally presumed correct, and the taxpayer bears the burden
(continued...)

I.   Whether the Equipment Leasing Activity Was Engaged In for Profit

Generally, individuals are allowed to fully deduct losses attributable to an activity engaged in for profit.  See secs. 183(a), 162(a), and 212.  A taxpayer must engage in an activity with an actual and honest, even though unreasonable or unrealistic, profit motive to deduct depreciation expenses.  See Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988); Keanini v. Commissioner, 94 T.C. 41, 45 (1990); Hulter v. Commissioner, 91 T.C. 371, 392-393 (1988); Fuchs v. Commissioner, 83 T.C. 79, 97-98 (1984); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.; see also sec. 162(a).  Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide.  Hulter v. Commissioner, supra; Beck v. Commissioner, 85 T.C. 557, 569 (1985); sec. 1.183-2(b), Income Tax Regs.  This is a factual question, and to resolve it, we generally look to nine nonexclusive factors.[7]  Sec. 1.183-2(b), Income Tax Regs.;

_____

[6](...continued)
of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are generally a matter of legislative grace, and the taxpayer bears the burden to prove he or she is entitled to the claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

[7]The factors in sec. 1.183-2(b), Income Tax Regs., are:
(continued...)

see Keanini v. Commissioner, supra at 46; Antonides v.
Commissioner, 91 T.C. at 694; Abramson v. Commissioner, 86 T.C.
360, 371 (1986); Dreicer v. Commissioner, supra at 645; Golanty
v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published
opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a) and (b),
Income Tax Regs.

The Court of Appeals for the Fifth Circuit, to which this
case is appealable, requires that the taxpayer engage in the
activity with the "primary purpose" of realizing an economic
profit independent of tax savings.  See Commissioner v.
Groetzinger, 480 U.S. 23, 35 (1987); Westbrook v. Commissioner,
68 F.3d 868, 875 (5th Cir. 1995), affg. T.C. Memo. 1993-634; cf.
Keanini v. Commissioner, supra.  We therefore apply the "primary
purpose" standard.

Respondent concedes that he bears the burden of proof on
this issue because he raised the claim in an amended answer.  See
Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).  To
succeed, therefore, respondent must prove that petitioner did not

---

[7](...continued)
(1) The manner in which the taxpayer carried on the activity; (2)
the expertise of the taxpayer or his advisers; (3) the time and
effort expended by the taxpayer in carrying on the activity; (4)
the expectation that the assets used in the activity may
appreciate in value; (5) the success of the taxpayer in carrying
on other activities for profit; (6) the taxpayer's history of
income or losses with respect to the activity; (7) the amount of
occasional profits, if any, which are earned; (8) the financial
status of the taxpayer; and (9) elements of personal pleasure or
recreation.

enter into the leasing activity with the primary purpose to profit.

Petitioner argues that we should group the equipment leasing activity with his law practice in determining whether there was a profit motive. Alternatively, petitioner argues that, if we do not group the activities, he engaged in the leasing activity for profit. Respondent counters that the leasing activity and the law practice cannot be grouped because they are separate activities, and that the leasing activity was not an activity engaged in for profit.

A.    Whether Petitioner's Law Practice and His Leasing
      Activity May Be Grouped for Purposes of Section 183

A taxpayer's various activities may be viewed as a single activity if they are sufficiently interconnected. See sec. 1.183-1(d)(1), Income Tax Regs. We look to the organizational and economic interrelationship of the activities, their business purpose, and their overall similarity in determining whether they may be viewed collectively. Id. Further, the Commissioner will generally accept a taxpayer's characterization of his or her various undertakings as one activity unless it appears that the characterization is artificial and unsupported by the facts. Id.

Section 183 applies, however, only to individuals and S corporations. See sec. 1.183-1(a), Income Tax Regs. (extending section 183 application to trusts and estates because they are taxed as individuals). Further, the section 183 regulations

explicitly except C corporations, stating that no inference may be drawn from section 183 and its regulations as to whether a corporation is engaged in an activity for profit. Sec. 1.183-1(a), Income Tax Regs. The point of amalgamating two undertakings into a single activity is to net the expenses of one against the revenue of the other, an objective that cannot be accomplished where one undertaking is that of a C corporation and the other is an undertaking by an individual. Because the law firm was a C corporation, petitioner may not group the law firm with his leasing activity for purposes of section 183.[8]

B. Whether the Activity Was Engaged In for Profit

Although we agree with respondent that the leasing activity and the law practice cannot be grouped, we nonetheless find that respondent has failed to meet his burden to show that petitioner did not engage in the leasing activity with the primary purpose to earn a profit. See Swaffar v. Commissioner, T.C. Memo. 1992-180 (the Court did not affirmatively find that the taxpayers lacked a profit objective, but rather found only that the Commissioner failed to prove that the taxpayers lacked a profit

---

[8]Petitioner also argues that, if we do not group the two undertakings, the law firm's profit objective still should be attributed to his leasing activity. See Campbell v. Commissioner, 868 F.2d 833 (6th Cir. 1989), revg. T.C. Memo. 1986-569; Wilkinson v. Commissioner, T.C. Memo. 1996-39; De Mendoza v. Commissioner, T.C. Memo. 1994-314; Kuhn v. Commissioner, T.C. Memo. 1992-460; cf. Baldwin v. Commissioner, T.C. Memo. 2002-162. We need not resolve this issue.

objective, where the issue was raised by the Commissioner as a new matter).  We start by noting that petitioner's leasing activity was not a hobby masquerading as a business.  See Cornfeld v. Commissioner, 797 F.2d 1049, 1052 (D.C. Cir. 1986), revg. T.C. Memo. 1984-105.  This distinguishes a large class of cases where profit objective is reasonably placed in doubt because the taxpayer derives an intangible personal benefit from the purported business.  Id.; see Bessenyey v. Commissioner, 379 F.2d 252 (2d Cir. 1967) (raising Hungarian half-breds held not to be an activity for profit), affg. 45 T.C. 261 (1965); sec. 1.183-2(a), Income Tax Regs.  Further, nothing in the record suggests that petitioner's equipment was purchased for personal use.  See, e.g., Westerman v. Commissioner, 55 T.C. 478 (1970); Fischer v. Commissioner, 50 T.C. 164, 171 (1968).

The record establishes without contradiction that petitioner was an astute businessman and attorney.  He earned substantial income from the law firm, and he accomplished this in part through his expertise in operating the leased equipment, which was crucial to his legal practice.  Further, petitioner engaged in the leasing activity on the advice of his accountant, he used the equipment solely for the law firm, he collected rent consistently except during the years at issue, he had a high degree of knowledge and skill related to the equipment, he kept records regarding amounts invested, rents received, and

depreciation taken on the equipment, and he derived no personal pleasure or recreation from using the equipment. We also find petitioner's testimony as to his intent to profit from the equipment leasing activity credible, thorough, and persuasive.

Further, respondent argues that petitioner could not profit on the amount he charged in rent, yet presented no evidence regarding prevailing market rental rates for similar equipment. Respondent also argues that petitioner should have sold the equipment for fair market value rather than book value, but has presented no evidence regarding the fair market value of the equipment, particularly for computer equipment that may lose value rapidly. Consequently, respondent has not met his burden to show that petitioner did not engage in the equipment leasing activity with the primary purpose to earn a profit. Commissioner v. Groetzinger, 480 U.S. at 35; Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; Warden v. Commissioner, T.C. Memo. 1995-176, affd. without published opinion 111 F.3d 139 (9th Cir. 1997).

II. Whether the Passive Loss Rules Preclude Petitioner From Deducting His Losses

Respondent also argues that, if section 183 does not deny petitioner the loss deduction, then the loss deduction should be disallowed pursuant to the passive activity loss limitations. See sec. 469. Petitioner concedes that he has the burden of

proof on this issue. See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933).

Losses from a passive activity are generally not allowed as a deduction for the year in which they are sustained, except to the extent of passive activity income. Sec. 469(a). A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for the year. See sec. 469(d)(1).

Passive activities are those activities involving the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activities are presumptively passive, without regard to whether the taxpayer materially participates in the activity. See sec. 469(c)(2), (4). Both parties agree that petitioner's equipment leasing activity is a rental activity and that the income from the activity is therefore passive, unless petitioner qualifies under one of six exceptions listed in the regulations. See <u>Welch v. Commissioner</u>, T.C. Memo. 1998-310; sec. 1.469-1T(e)(3)(ii)(A) through (F), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).[9] The exception relevant here is the incidental

---

[9]The Commissioner is given authority under sec. 469(l) to prescribe regulations to carry out the provisions of the section. As relevant here, this statutory authority was carried out in sec. 1.469-1T, Temporary Income Tax Regs., 53 Fed. Reg. 5701 (Feb. 25, 1988), sec. 1.469-5T, Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988), and sec. 1.469-9, Income Tax
(continued...)

activity exception, and we now address whether this exception applies to petitioner's equipment leasing activity.

A. Whether Petitioner Qualifies for the Incidental Activity Exception

An activity involving the use of tangible property is not considered a rental activity if the rental is "incidental" to a nonrental activity of the taxpayer. Sec. 1.469-1T(e)(3)(ii)(D), Temporary Income Tax Regs., supra. Before we discuss whether petitioner meets the incidental activity exception, however, we must determine whether the law firm activity, conducted through a C corporation, can be classified as an activity of the petitioner for purposes of the incidental activity exception.

1. Whether Petitioner's Activities Include Those Conducted Through His C Corporation

A taxpayer's activities include those conducted through C corporations that are subject to the passive loss rules of section 469. Sec. 1.469-4(a), Income Tax Regs. C corporations subject to section 469 include closely held C corporations, which are corporations where at least half the stock is owned by no more than five individuals. Secs. 469(a)(2)(B), (j)(1), 465(a)(1)(B), 542(a)(2). Because petitioner owned 100 percent of the stock in the law firm, his professional corporation, petitioner's activities included his C corporation activities.

---

[9](...continued)
Regs. See also sec. 7805.

See also <u>Schwalbach v. Commissioner</u>, 111 T.C. 215, 225-226 (1998).

2.   <u>Whether Petitioner Meets the Incidental Activity Exception Conditions</u>

To qualify for the incidental activity exception by having a rental of property treated as incidental to a trade or business activity, a taxpayer must meet three conditions.  See sec. 1.469-1(T)(e)(3)(vi)(C)(1)-(3), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).  First, the taxpayer must own an interest in the trade or business.  Second, the property at issue must predominantly be used in the trade or business during the taxable year or during at least 2 of the 5 immediately preceding taxable years.  Third, the gross rental income from the property for the taxable year must be less than 2 percent of the lesser of (i) the unadjusted basis of the property and (ii) the fair market value of such property.  Petitioner meets these requirements.

Petitioner owns an interest in the law firm as its exclusive owner.  On the basis of the evidence, the equipment leased to the law firm was integral to the operation of the law firm.  The equipment was crucial in petitioner presenting his cases, and petitioner's particular skill with the equipment increased his renown in the class-action field.  Finally, the parties do not dispute that petitioner's gross rental income from the equipment leasing activity met the percentage requirement, because petitioner received no rental income during the years at issue.

Petitioner therefore qualifies for the incidental rental exception.  See Tarakci v. Commissioner, T.C. Memo. 2000-358.  We now address one additional argument by respondent.

3.   Whether Petitioner May Simultaneously Use the Equipment in His Trade or Business and the Rental Activity

Respondent also argues that the incidental activity exception does not apply here because the exception requires petitioner to temporarily stop using the property in his trade or business before using it in a rental activity.  In essence, respondent claims that the exception is not available when the property is used in the leasing activity and the law firm "simultaneously" and advances two main arguments in support of that claim.

First, respondent argues that the regulation uses the past tense when referring to the use of the property in the trade or business.  See sec. 1.469-1T(e)(3)(vi)(C)(2), Temporary Income Tax Regs., supra.  Respondent focuses on the word "was" in the regulation to argue that the leased property cannot be used in a rental and a nonrental activity simultaneously.  We disagree.

We note that the word "was" in the regulation refers not only to past years but also to the current taxable year.  See Philips Petroleum Co. v. Commissioner, 101 T.C. 78, 107 (1993) (we apply a regulation according to its plain or ordinary meaning), affd. without published opinion 70 F.3d 1282 (10th Cir. 1995).  The incidental activity regulation requires, among other

things, that "[t]he property was predominantly used in such trade or business activity <u>during the taxable year</u>." <u>Id.</u> (emphasis added). The equipment therefore may be used in petitioner's law firm at any time in the taxable year under the incidental activity exception.

Second, respondent argues that the preamble to the Treasury Decision in which the incidental activity exception was promulgated also supports his argument that the property must be used in the taxpayer's trade or business <u>before</u> its use in the taxpayer's rental activity. See T.D. 8175, 1988-1 C.B. 191. The preamble states specifically that the exception applies if "an insubstantial amount of rental income is derived from property that was recently used in a trade or business activity of the taxpayer and is temporarily rented." <u>Id.</u>, 1988-1 C.B. at 193.

While the preamble does refer to the use of the property in the trade or business activity in the past tense and the use of the property in the rental activity in the present tense, we believe the preamble merely exemplifies a situation that would satisfy the incidental activity exception. The preamble does not bar situations where the property is being used in both activities at once. Consequently, petitioner may use the equipment in the law firm concurrently with using it in the rental activity. See <u>Tarakci v. Commissioner</u>, <u>supra</u>.

4.  Conclusion

Because petitioner has satisfied the incidental activity exception elements, he is entitled to treat his equipment leasing activity as incidental to the law firm's trade or business activity.  Petitioner's leasing activity, therefore, is a nonrental activity.

B.  Material Participation

Finally, petitioner must also carry his burden to prove that he materially participated in the activity to qualify the losses as nonpassive.  See sec. 469(c)(1); Welch v. Commissioner, T.C. Memo. 1998-310.  A taxpayer is treated as materially participating in an activity only if the taxpayer is involved in the activity on a basis which is regular, continuous, and substantial.  See sec. 469(h)(1).

A taxpayer may satisfy the material participation requirement if the taxpayer satisfies any one of seven safe harbor tests.  See sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988); see also Lapid v. Commissioner, T.C. Memo. 2004-222 (citing Mordkin v. Commissioner, T.C. Memo. 1996-187, which upheld the regulatory "safe harbor" tests letting taxpayers prove material participation by showing they spent a certain number of hours on an activity).  One test is particularly relevant here.

An individual may be treated as materially participating in an activity if his or her participation in that activity during the taxable year constitutes substantially all of the participation[10] in the activity for that year.  Sec. 1.469-5T(a)(2), Temporary Income Tax Regs., supra.  Because petitioner exclusively engaged in and managed the leasing activity, he meets this safe harbor test and thus satisfies the material participation standard.  We therefore find that petitioner has satisfied his burden of showing that he materially participated in the activity and was involved in the leasing activity on a regular, continuous, and substantial basis.  See sec. 469(c)(1), (h)(1); sec. 1.469-5T(a)(2), (7), Temporary Income Tax Regs., supra.

III. Conclusion

Because we have found that respondent failed to meet his burden to show petitioner did not engage in the equipment leasing activity for profit, petitioner's losses are not limited by section 183.  We have also found that petitioner's equipment leasing activity was a nonrental activity in which petitioner materially participated.  Petitioner's losses, therefore, are not limited by the passive activity rules of section 469, and

---

[10]"Participation" generally means any work done in an activity by an individual who owns an interest in the activity. Sec. 1.469-5(f)(1), Income Tax Regs.

petitioner may net his equipment leasing activity losses in the years at issue with the law firm income.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioners</u>.