T.C. Memo. 1998-310


UNITED STATES TAX COURT


MICHAEL D. AND JOAN WELCH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18402-96.              Filed August 24, 1998.


Michael D. Welch and Joan Welch, pro se.


<u>Andrew Lee</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  Respondent determined a deficiency in petitioners' 1993
Federal income tax in the amount of $878 and an accuracy-related

---

[1] All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

penalty under section 6662(a) in the amount of $176.  After a concession by respondent, the issues for decision are: (1) Whether a loss incurred by petitioner husband's equipment leasing activity is subject to the passive activities loss rules; (2) in the alternative, whether unreimbursed expenditures for that activity are employee business expenses deductible on Schedule A; and (3) whether petitioners are liable for the accuracy-related penalty.[2]

Petitioners resided in Silverado, California, at the time of filing their petition.

Petitioner Michael D. Welch (petitioner) is a carpenter by trade and is hired by movie production companies as a construction coordinator.  As a construction coordinator, petitioner coordinates the construction of the sets required for the movie.  He hires other employees, arranges for purchase of materials, and furnishes all the tools needed for the project. In this connection, petitioner was required to purchase, maintain, transport, and repair the tools as needed.

When petitioner is hired by the production company, he enters into a "deal memorandum" (or deal memo).  The deal memo sets forth the terms of petitioner's employment, including the

---

[2] Respondent also contends that substantiation of some of the expenses is at issue, which petitioners dispute.  After careful review of the record herein, we conclude and hold that no substantiation issue was properly and timely raised.

rate at which he will be paid and the rate at which he will rent tools and equipment to the production company. Typically attached to the deal memo would be a list of the inventory of petitioner's tools and equipment. For example, in 1993, petitioner entered into a deal memo with Mantis Productions providing for both a weekly and hourly salary, as well as a tool rental for $100 per day as used and a truck rental for $125 per week. In 1994, as another example of a typical deal memo, petitioner entered into an agreement with Mitchell Entertainment, Inc. to be construction coordinator for the film "Cub Scouts". The deal memo, again, provided for daily, weekly, and "straight time" rates plus "box/kit/equipment" rental at $140 per day.

The production companies at the end of the year would send petitioner Forms W-2 to reflect wages paid and Forms 1099 to reflect rentals paid under the terms of the deal memos.

Also in 1993, petitioner rented some of his tools to a third party for $1,500, for a project in which he (petitioner) was not involved as construction coordinator or otherwise. However, this transaction did not result in a loss.

On petitioners' joint income tax return for 1993, petitioner reported wages in accordance with the Forms W-2 of $37,838. On a Schedule C, he reported gross receipts of $10,200 and expenses of $17,247, resulting in a net loss of $7,047. The gross receipts were for the rentals received. Included in the expenses are car

and truck $928, legal and professional $1,900, office expense $413, supplies $106, taxes and licenses $120, meals and entertainment $346, equipment rental use $10,687, home office $1,000, location travel $679, telephone $738, and union dues $330.[3]

Petitioners' return was prepared by Mr. Virgil Judd. The determination to reflect the rental income and expenses on Schedule C was made by Mr. Judd and petitioner jointly. Mr. Judd stated that he was following the procedure that had been used in previous years, and petitioner testified that 1993 was the only year in which he had reported a loss from this activity.

In the notice of deficiency, respondent took alternative positions with regard to petitioner's Schedule C. Initially, respondent determined that the Schedule C loss was not allowable because it was incurred in the pursuit of a passive activity. In the alternative, respondent takes the position that the $10,200, reported as income on Schedule C, is merely reimbursement for employee business expenses. Therefore, respondent contends that the petitioner should have reported his employee business expenses on Schedule A, reduced by the $10,200.[4]

_____

[3] On Schedule A, petitioner also deducted $3,491 as Form 2106 expenses (i.e. employee business expenses) and $1,244 as union and professional dues.

[4] Although respondent disallowed the entire loss claimed on Schedule C, respondent also disallowed by a separate adjustment
(continued...)

Discussion

Section 469 generally disallows for the taxable year any
passive activity loss that exceeds passive activity income.
Sec. 469(a)(1), (d)(1).  Passive activity is any activity which
involves the conduct of any trade or business in which the
taxpayer does not materially participate.  Sec. 469(c)(1).
Without regard to whether a taxpayer materially participates in
an activity, the term "passive activity" includes any rental
activity.  Sec. 469(c)(2), (4).

A rental activity is any activity where payments are
principally for the use of tangible property.  Sec. 469(j)(8).
There are exceptions to the definition of "rental activity".
Section 1.469-1T(e)(3)(ii).  Temporary Income Tax Regs., 53 Fed.
Reg. 5702 (Feb. 25, 1998), provides:

> an activity involving the use of tangible
> property is not a rental activity for a taxable year if
> for such taxable year --
>
> (A) The average period of customer use for such
> property is seven days or less;
>
> (B) The average period of customer use for such
> property is 30 days or less, and significant personal
> services (within the meaning of paragraph (e)(3)(iv) of
> this section) are provided by or on behalf of the owner
> of the property in connection with making the property
> available for use by customers;

---

[4](...continued)
$200 of the $1,900 claimed as legal expenses.  At trial,
respondent conceded the latter adjustment.

(C) Extraordinary personal services (within the meaning of paragraph (e)(3)(v) of this section) are provided by or on behalf of the owner of the property in connection with making such property available for use by customers (without regard to the average period of customer use);

(D) The rental of such property is treated as incidental to a non-rental activity of the taxpayer under paragraph (e)(3)(vi) of this section * * *.

Section 1.469-1T(e)(3)(iv), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988), provides, in part, a definition of "significant personal services":

In determining whether personal services provided in connection with making property available for use by customers are significant, all of the relevant facts and circumstances shall be taken into account. Relevant facts and circumstances include the frequency with which such services are provided, the type and amount of labor required to perform such services, and the value of such services relative to the amount charged for the use of the property.

Section 1.469-1T(e)(3)(v), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988), defines "extraordinary personal services" as follows:

For purposes of paragraph (e)(3)(ii)(C) of this section extraordinary personal services are provided in connection with making property available for use by customers only if the services provided in connection with the use of the property are performed by individuals, and the use by customers of the property is incidental to their receipt of such services.

Thus, petitioner must prove that the rental of equipment to the production companies was not a passive activity. In so doing, he must first prove that the activity was not a "rental

activity" as defined above, for any rental activity is a passive activity. If petitioner establishes that the activity was not a rental activity, he then must establish that he materially participated in the activity to avoid the proscription of section 469.

On this record, we find that petitioner provided equipment to production companies for an average period of 30 days or less and that he performed significant personal services in connection with making the property available for use by customers. Petitioner acquired, maintained, transported and repaired the tools and equipment. We also find that petitioner provided extraordinary personal services. The rental of the tools and equipment by the production companies is incidental to their receipt of petitioner's services as construction coordinator. Therefore, we hold that petitioner's activity was not a rental activity within the meaning of section 469(j)(8).

A taxpayer is treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is regular, continuous, and substantial. Sec. 469(h)(1). Petitioner's business as construction coordinator was regular, continuous (for each project), and substantial. Therefore, we hold that petitioner materially participated in his rental activity, and the

provisions of section 469 do not apply to deny petitioner a deduction for the full loss from this activity.

We now examine respondent's alternative theory that petitioner was merely incurring employee business expenses, which were partially reimbursed and the excess is deductible on Schedule A. This issue requires us to determine whether the expenses claimed were properly attributable to a separate activity of renting the equipment or whether the expenditures pertained to petitioner's activity of being an employee. The latter expenses are deductible on Schedule A as an itemized deduction. After a careful review of this record, we conclude that the expenses claimed on Schedule C for car and truck, equipment rental use, and location travel pertain to the rental activity and are allowable as Schedule C deductions. Petitioner has not clearly shown how the other claimed expenses pertain to the rental activity, and therefore we hold that they are only deductible as unreimbursed employee business expenses on Schedule A.

In view of the above, we further hold that petitioners are not liable for the accuracy-related penalty. The adjustment required by shifting some expenses from Schedule C to Schedule A will reduce the loss claimed on Schedule C, increase adjusted gross income by a like amount, and increase the 2-percent floor limiting the deduction of unreimbursed business expenses.

However, the resulting deficiency will be small.  Moreover, petitioners made a good faith attempt to report their correct tax liability, and the deficiency, if any, results from a technical reporting requirement change rather than from the claiming of unallowable deductions.

　　　To reflect the above,

<u>Decision will be entered under Rule 155</u>.