T.C. Memo. 2005-14

UNITED STATES TAX COURT

ASSAF F. AL ASSAF AND REHAB ASSAF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 770-03.                    Filed January 31, 2005.

<u>Rehab R. Assaf</u>, for petitioners.

<u>William F. Castor</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies of $8,940
for 1999 and $12,486 for 2000 in petitioners' Federal income
taxes.  The issue to be decided is whether the passive loss rules
of section 469[1] preclude petitioners from deducting leasing

_____

[1]All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

activity losses incurred by their wholly owned limited liability company.  We hold that they do not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners resided in Oklahoma City, Oklahoma, at the time they filed the petition.

Petitioner wife was a partner in the law firm of Assaf & Cohlmia, PLLC (the law firm), in Oklahoma City, Oklahoma, during the years at issue.  During the same time, petitioner husband was a medical doctor and worked full-time as a professor at the University of Oklahoma Health Sciences Center in Oklahoma City, Oklahoma.

Petitioner husband also provided consulting services to his wife's law firm, other attorneys, and health maintenance organizations.  The services he provided included reviewing medical-malpractice cases, serving as an expert witness, performing mock surveys, and providing training in quality assurance programs.  Petitioner husband engaged in the consulting activity as a part of a professional practice plan within the University of Oklahoma Health Sciences Center, which allowed its professors to pursue business activities outside the University relating to their area of expertise.

Petitioners conducted their respective practices in the same office building (the office building).  The office building was owned by AGI Consulting, LLC (AGI), in which petitioners were each 50-percent shareholders.  Petitioner husband's consulting activities were conducted through AGI, while petitioner wife's

law practice was conducted apart from AGI.[2]  AGI's principal activity was providing legal support services to attorneys to whom it leased space.  AGI therefore engaged in three kinds of activities.  It provided legal support services, leased office space, and offered consulting services.

AGI employed an office staff consisting of at least three clerical support personnel to provide legal support services.  Services included client intake, answering phones, taking messages, filing documents at the courthouse and State capitol, process serving, express mailing, binding briefs, conducting legal research, typing briefs and legal memoranda, taking dictation, managing a file room, and photocopying.  AGI also maintained an updated law library and conference facilities for its tenants.  AGI provided other services including a security service, trash removal, janitorial services, coffee service, and general utilities.  AGI owned the office equipment it leased to the law firm and "nine or ten" other tenant attorneys.  AGI was reimbursed by the law firm, other attorneys, and petitioner husband for their shares of payroll and office expenses.  AGI also offered petitioner husband's consulting services to its tenants.  Tenant attorneys leased space in the office building principally to obtain these services that AGI offered.

Petitioner wife exclusively managed AGI's leasing activities and legal support services during the years at issue.  This involved supervising AGI's office staff, procuring supplies,

---

[2]The law practice leased space from AGI and used AGI's services.

performing or overseeing repairs and maintenance of the office building and office equipment, paying AGI's bills and payroll, depositing AGI's checks, filing related employment tax returns, remaining on call 7 days a week with the security service, and overseeing tenants moving in and out of the office building on weekends.

AGI incurred losses during the years at issue from the leasing activities and the legal support services, both of which it classified as nonpassive and netted with its consulting activity income on its partnership returns. AGI had net losses of $34,090 in 1999 and $34,207 in 2000. AGI issued Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., each year to petitioners reflecting their distributive share of the losses, which they shared equally. Petitioners each reported their distributive share of the losses in each year at issue on Schedule E, Supplemental Income and Loss. Petitioner wife's Schedule E losses from AGI for 1999 and 2000 reduced her self-employment income from the law practice.

Respondent determined in the statutory notice of deficiency, dated December 11, 2002, that AGI's leasing activities were per se passive and limited by the passive activity rules. In making that determination, respondent cited petitioner wife's law practice gross income of $175,505 in 1999 and $220,974 in 2000 as evidence that she could not have devoted the necessary time to AGI. Respondent determined, consequently, that petitioners did not qualify for an exception to the passive loss rules and should not have netted income from AGI's consulting services with losses from its leasing activities and legal support services.

Petitioners timely filed a petition contesting respondent's determination, arguing that they qualified for an exception to the passive loss rules because of the nature of the services AGI provided and because of the number of hours petitioner wife spent managing AGI. Petitioner wife also disputes respondent's claim that she worked full-time in her law practice, claiming that the law practice income was mostly attributable to income earned on a flat-fee basis or for work performed in prior years.

## OPINION

Passive activity losses that exceed passive activity income are generally disallowed. Sec. 469(a)(1), (d)(1). Passive activities include the conduct of any trade or business activities in which the taxpayer does not materially participate and rental activities without regard to whether the taxpayer materially participates. Sec. 469(c)(1), (2), (4); see also sec. 469(j)(8); sec. 1.469-1T(e)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).[3] A rental activity is any activity where payments are principally for the use of tangible property. Sec. 469(j)(8).

There are several exceptions to the definition of "rental activity", one of which petitioners assert applies.[4] Sec. 1.469-

[3]The Commissioner is given authority under sec. 469(l) to prescribe regulations to carry out the provisions of the section. As relevant here, this statutory authority was carried out in sec. 1.469-1T, Temporary Income Tax Regs., 53 Fed. Reg. 5701 (Feb. 25, 1988), sec. 1.469-5T, Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988), and sec. 1.469-9, Income Tax Regs. See also sec. 7805.

[4]Petitioners also argued that the leasing activity was nonpassive because petitioner wife qualified as a real estate
(continued...)

1T(e)(3)(ii), Temporary Income Tax Regs., supra.  Respondent counters that AGI's leasing activities are per se passive in nature and that petitioners do not qualify for any exception.  Instead, respondent claims the losses by petitioners should have been suspended until a future date when petitioners had gains from passive activities.  See sec. 469(b).

We address, first, whether petitioners produced evidence sufficient to shift the burden of proof to respondent under section 7491.  We address, second, whether one of the exceptions to the definition of a "rental activity" applies and whether petitioners materially participated in that activity.

Burden of Proof

Determinations of the Commissioner in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are generally a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

---

[4](...continued)
professional under sec. 469(c)(7)(B).  If a taxpayer qualifies as a real estate professional, the rental activities of the real estate professional are exempt from classification as a passive activity under sec. 469(c)(2).  Instead, the real estate professional's rental activities are treated as a passive activity under sec. 469(c)(1) unless the taxpayer materially participated in the activity.  Sec. 1.469-9(e)(1), Income Tax Regs.  Because we find that petitioners qualified for the extraordinary personal services exception, petitioners are not engaged in a rental activity, and we need not address whether petitioners qualify for the real estate professional exception.

This burden, however, may shift to the Commissioner to disprove entitlement to a claimed deduction if the taxpayer introduces "credible evidence" complete with the necessary substantiation and documentation sufficient to fulfill the requirements of section 7491(a).[5]  To shift the burden, the taxpayer must also have complied with requirements to cooperate with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews.  Id.  The taxpayer bears the burden of proving that these requirements have been met.  Snyder v. Commissioner, T.C. Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

In the context of the passive loss rules under section 469, a taxpayer's participation in an activity may be established by any reasonable means.  Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra at 5727; see Shaw v. Commissioner, T.C. Memo. 2002-35.  Contemporaneous daily time reports are not required if the extent of participation may be established by other reasonable means.  Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra.  Reasonable means may include identifying services performed over a period of time and the approximate number of hours spent performing the services during that period based on appointment books, calendars, or narrative summaries.  Id.  Although the

---

[5]Sec. 7491 applies to examinations commencing after July 22, 1998, and therefore applies here.  See Internal Revenue Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726.

regulations are vague, they do not allow a post-event "ballpark guesstimate". <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223.

In testimony and exhibits, petitioner wife produced credible evidence to establish that she met the requisite time requirements. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442 (2001). Petitioner wife did not comply, however, with respondent's reasonable request to view redacted law practice time sheets. Accordingly, we find that section 7491 does not shift the burden of proof to respondent. Petitioners therefore bear the burden of proving by a preponderance of the evidence that they qualified for an exception to the definition of a rental activity.

<u>Extraordinary Personal Services</u>

We address next whether petitioners qualify for the extraordinary personal services exception. To qualify for the extraordinary personal services exception, petitioners must prove that the activity was not a "rental activity" under section 469(j)(8). In so doing, petitioners must prove that the use by customers of AGI's real property was incidental to their receipt of AGI's services.[6] Sec. 1.469-1T(e)(3)(ii)(C), Temporary Income Tax Regs., <u>supra</u> at 5702.

Very little guidance exists on the meaning of "extraordinary" personal services, and no reported case by this

---

[6]The extraordinary personal services exception is separate from another exception, not at issue here, where the rental of property is "incidental to" a nonrental activity. See sec. 1.469-1T(e)(3)(ii)(D), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1998). Unlike the extraordinary personal services exception, this exception involves a computational analysis. See sec. 1.469-1T(e)(3)(vi); compare sec. 1.469-1T(e)(3)(v), Temporary Income Tax Regs., <u>supra</u>.

Court has addressed the extraordinary personal services exception with facts similar to ours.  Two cases involved equipment leasing activities that are distinguishable from the facts here.  Kessler v. Commissioner, T.C. Memo. 2003-185; Hairston v. Commissioner, T.C. Memo. 2000-386.  Neither case is dispositive.

Both cases concerned equipment leasing activities, while we are addressing real property leasing activities in conjunction with legal support services.  Moreover, the taxpayers in both Hairston and Kessler personally owned the equipment they leased to their wholly owned companies, which in turn leased the equipment to third-party end users.  In each case, the lease provided that the taxpayers' company would perform equipment maintenance.  The taxpayers therefore performed maintenance services not in their role as owners of the equipment but rather in their role as corporate officers or employees.  The Court consequently found that the services performed were unrelated to the taxpayers' leasing activities.  Kessler v. Commissioner, supra; Hairston v. Commissioner, supra.  Here, AGI owned the real property that it leased to tenants, not petitioners, and AGI provided the services.  AGI was therefore the lessor and service provider.

Moreover, the services provided in Hairston and Kessler were minimal in comparison with the legal support services AGI provided to its attorney-tenants.  While the services in Hairston

and <u>Kessler</u> involved maintaining and servicing equipment, AGI provided extensive services.[7]

Only one case has previously determined that the services provided were extraordinary. <u>Welch v. Commissioner</u>, T.C. Memo. 1998-310. <u>Welch</u> involved personal service contracts in which the taxpayer, a carpenter, contracted with movie production companies to construct movie sets. The taxpayer also leased tools and equipment to the production companies. The Court found that the movie company's primary motivation was to obtain the taxpayer's services and not to lease his equipment. <u>Id.</u> Similarly, we find that AGI's attorney-tenants leased from AGI primarily to obtain its legal support services and not to lease its office space.

The regulations provide examples regarding when the extraordinary personal services exception might apply. Two examples concern the use by patients of a hospital's boarding facilities and the use by students of a boarding school's dormitories.[8] See sec. 1.469-1T(e)(3)(v), Temporary Income Tax Regs., <u>supra</u> at 5702. In each, the use of the premises was

---

[7]Further, the Court in <u>Hairston v. Commissioner</u>, T.C. Memo. 2000-386, stated that no credible evidence supported taxpayers' contention that extraordinary services were performed. The Court found, rather, that the taxpayers individually had "little or no responsibility" for maintaining the equipment under the lease, and that the taxpayers merely "serviced and maintained" equipment they rented. In contrast, the record supports petitioners' contention that petitioner wife was continuously engaged in providing extensive legal support services.

[8]Additional examples in the regulations address the extraordinary personal services exception in the context of leasing photographic equipment, leasing tractor trailers, and leasing a taxi. See sec. 1.469-1T(e)(3)(viii), <u>Examples</u> (<u>1</u>), (<u>3</u>), (<u>9</u>), Temporary Income Tax Regs., <u>supra</u> at 5703-5704. We do not find these examples analogous to our facts.

incidental to the services offered.  Id.  The facts in our case are more akin to those services offered by a hospital or school, where the prime concern of the tenants is the receipt of services, whether medical, teaching, or, in our case, legal. While the space leased may have factored into the attorney-tenants' determination, it was incidental to the services they received.

AGI provided substantial support services to its tenants, and AGI's tenants leased space exclusively so that they would have the benefit of those services.  Specifically, AGI provided its attorney-tenants with a paralegal, a legal intern, a law clerk, an up-to-date law library, a computer with legal research capabilities, and two conference rooms.[9]  AGI's employees performed client intake, answered phones, took messages, filed documents at the courthouse and State capitol, typed briefs, took dictation, referred cases, scheduled depositions and court reporters, arranged travel, managed a file room and file storage, and performed legal research.  AGI also offered petitioner husband's expert consulting services, as well as referrals for medical-related cases.

Witnesses for petitioners testified that AGI's services to its tenants were unique in the area close to the courthouse, and that they would not have moved onto the premises if the support services were not provided.  We find of particular significance that AGI performed legal research for its attorney-tenants.

---

[9]After the years at issue, AGI also provided tenants with video-conferencing equipment.

Overall, testimony established that the services were the crucial determinant in attorneys' choosing to lease from AGI, and we found the testimony on behalf of petitioners credible and compelling. See <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 575 (1985). We therefore find the payments to AGI were principally for the services provided and not for the space leased. Consequently, the leasing activity is not a rental activity.

<u>Material Participation</u>

Finally, to qualify the losses as nonpassive, petitioners must carry their burden to prove not only that the extraordinary personal services exception applies, but also that petitioners materially participated in the activity.

Material participation is defined as involvement in the operations of an activity that is regular, continuous, and substantial. Sec. 469(h)(1). A taxpayer may also satisfy the material participation requirement if the individual satisfies any one of seven regulatory tests. See sec. 1.469-5T(a), Temporary Income Tax Regs., <u>supra</u> at 5725; see also <u>Lapid v. Commissioner</u>, T.C. Memo. 2004-222 (citing <u>Mordkin v. Commissioner</u>, T.C. Memo. 1996-187, which upheld the regulatory "safe harbor" tests letting taxpayers prove material participation by showing they spent a certain number of hours on an activity). The test most applicable in this case is whether petitioner wife participated in the nonrental activity for more than 500 hours during the year. See <u>Harrison v. Commissioner</u>, T.C. Memo. 1996-509; sec. 1.469-5T(a)(1), Temporary Income Tax

Regs., supra at 5725. "Participation" generally means any work done in an activity by an individual who owns an interest in the activity. Sec. 1.469-5(f)(1), Income Tax Regs.

Petitioner wife has shown, through exhibits and testimony, that she provided regular and substantial services to AGI's tenants. Petitioner wife was daily onsite and in charge of AGI's leasing activities and legal support services during the years at issue. She estimated, in retrospect, that her total time spent on office leasing activities was approximately 1,340 hours per year. As the onsite manager of AGI's legal support services, petitioner wife supervised the office staff, met the business and legal needs of "nine to ten" tenant attorneys and other non-tenant attorneys. Petitioner wife also performed payroll, accounts payable, and accounts receivable services, and maintained the law library.

Respondent argues that, while petitioner wife provided a good faith estimate of her time spent in AGI's activities, it was not based on any objective measure, and the lack of contemporaneous logs or calendars cast doubt on her pretrial estimate of time spent in the activities.[10] As a result,

---

[10]It is not clear whether respondent disputes that petitioner wife materially participated in the activity. For example, respondent discusses Shaw v. Commissioner, T.C. Memo. 2002-35, which held that a taxpayer had not materially participated in a passive activity. Respondent also claimed that petitioner wife did not adequately document the extent of time she spent on the activity. Respondent's arguments, however, focused primarily on the number of hours petitioner wife worked in relation to the real estate professional exception, which requires, among other things, that petitioner wife spend in excess of 750 hours on the activity. Because our holding does

(continued...)

respondent contends that petitioner wife's estimate was neither reasonable nor reliable. Petitioner wife counters that she still performs the same activities, which are at issue in this case, so the computations of time were not based on distant memories. Based on testimony regarding petitioner wife's onsite management of AGI's employees, petitioner wife contends she has adequately satisfied the requirement that she materially participated in the nonrental activity.

We have no doubt that petitioner wife spent substantial time on the leasing activities and legal support services. Although this Court has not always accepted a post-event narrative of participation, we find petitioner wife's description of her participation, when combined with witness testimony and the objective evidence in the record, to be credible, and we therefore conclude that petitioner wife materially participated in the activity by participating for more than 500 hours during the year. See Harrison v. Commissioner, T.C. Memo. 1996-509. Accordingly, petitioners have satisfied their burden of showing

---

[10](...continued)
not require an analysis under the real estate professional exception, we apply respondent's argument to whether petitioner wife materially participated in the nonrental activity. Moreover, Shaw is distinguishable from the present case because many of the hours the taxpayer alleged to have spent materially participating in the passive activity in Shaw were in fact "investor type activities", which are not includable unless the individual is directly involved in the day-to-day management or operations of the activity. Sec. 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). As we have shown, petitioner wife daily participated in the management and operations of the activity.

petitioner wife materially participated in the nonrental activity.  See sec. 469(c)(1), (h)(1).

In conclusion, we find that the payments the attorney-tenants paid to AGI were principally for the use of the extraordinary personal services, and that the property leasing was incidental to the services AGI offered.  Having also determined that petitioners materially participated in the leasing activity, we find that AGI's activities are not passive activities.  AGI's losses therefore are nonpassive and may be netted with AGI's other income.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for petitioners.