**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-15

UNITED STATES TAX COURT

RENATO R. GHILARDI AND MARILYN GHILARDI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3640-11S.                    Filed February 21, 2013.

Renato R. Ghilardi and Marilyn Ghilardi, pro sese.

Eugene Kornel, Jessica Browde, and Gerard Mackey, for respondent.

SUMMARY OPINION

GALE, Judge:  This case was heard pursuant to the provisions of section 7463

of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to

_____

[1]Unless otherwise noted, all section references are to the Internal Revenue
Code of 1986, as in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' 2008 and 2009 Federal income tax of $10,880 and $10,048, respectively, and accuracy-related penalties under section 6662(a) of $2,176 and $2,009.60, respectively. The issues for decision are: (1) whether section 469 precludes petitioners' deductions of rental real estate losses for 2008 and 2009 in excess of those respondent allowed; and (2) whether petitioners are liable for accuracy-related penalties.[2]

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in New York.

Mr. Ghilardi was a licensed real estate salesperson during the years at issue. He operated under the supervision of a real estate broker and reported net losses on Schedules C, Profit or Loss From Business, attached to petitioners' joint Federal income tax returns for the years at issue. Mr. Ghilardi did not close any transactions as a real estate salesperson in 2008 or 2009, and he reported no income from such

_____

[2]The notice of deficiency also increased the taxable amount of petitioners' Social Security benefits by $1 for each year. Petitioners have not contested those adjustments.

work for either year.  During those years Mr. Ghilardi also worked between 15 and 18 hours per week as a driver education instructor.  Mrs. Ghilardi worked as a software writer for a computer technology company.

Mr. Ghilardi owned 50% of a two-unit residential rental property during the years at issue.  Petitioners reported deductible losses from the rental property of $53,604 for 2008 and $46,449 for 2009 on Schedules E, Supplemental Income and Loss, attached to their returns for those years.

Respondent disallowed the rental real estate losses petitioners claimed for 2008 and 2009 in the respective amounts of $48,825 and $40,185.50 on the grounds that the losses were generated by a passive activity, resulting in a deficiency for each year.[3]  Petitioners timely petitioned for redetermination.

## Discussion

### Rental Real Estate Losses

Deductions are a matter of legislative grace, and the burden of showing entitlement to a claimed deduction is on the taxpayer.[4]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Section 469 generally prohibits individual

---

[3]Pursuant to sec. 469(i) respondent allowed petitioners' deductions for rental real estate losses of $4,779 for 2008 and $6,263.50 for 2009.

[4]Petitioners have not claimed or shown entitlement to any shift in the burden of proof pursuant to sec. 7491(a).

taxpayers from currently deducting "passive activity" losses. A passive activity is, generally speaking, the conduct of any trade or business in which the taxpayer does not "materially participate". Sec. 469(c)(1). In general, a taxpayer is treated as materially participating in a trade or business if the taxpayer is involved in the operations of the trade or business on a regular, continuous, and substantial basis.[5] Sec. 469(h)(1). A "passive activity loss" is the amount by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year. Sec. 469(d)(1).

Rental activities are generally treated as per se passive activities regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). However, the rental activities of taxpayers in real property trades or businesses (real estate professionals) are not per se passive activities but are treated as trades or businesses subject to the material participation requirements of section 469(c)(1).[6] Sec. 1.469-

---

[5]Congress delegated the Secretary authority to prescribe regulations which specify what constitutes "material participation". Sec. 469(l)(1). The Secretary promulgated seven regulatory tests in sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). A taxpayer who satisfies any one of the seven tests meets the material participation requirement.

[6]A real property trade or business means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business. Sec. 469(c)(7)(C).

9(e)(1), Income Tax Regs. Under section 469(c)(7)(B) a taxpayer is a real estate professional if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the foregoing requirements for qualification as a real estate professional are satisfied if, and only if, either spouse separately satisfies the requirements. Sec. 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).

With respect to the evidence that a taxpayer may use to establish his or her hours of participation in a trade or business, section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such

services during such period, based on appointment books, calendars, or narrative summaries.

While the regulations allow taxpayers some latitude in establishing the extent of their participation in an activity, we have consistently held that they do not allow a postevent "ballpark guesstimate".  See Goshorn v. Commissioner, T.C. Memo. 1993-578; see also Moss v. Commissioner, 135 T.C. 365, 369 (2010); Fowler v. Commissioner, T.C. Memo. 2002-223.

Petitioners argue that their rental real estate losses are not passive activity losses because Mr. Ghilardi was a real estate professional and he materially participated in the operation of the rental property.[7]  Petitioners did not offer any contemporaneous evidence of the time Mr. Ghilardi spent performing services in real property trades or businesses during the years at issue.  Instead, to substantiate their claim they rely on a narrative and calendars Mr. Ghilardi prepared after the Internal Revenue Service (IRS) began its examination of petitioners' 2008 and 2009 returns.[8]  The calendars and the narrative purport to show that Mr. Ghilardi spent over 750 hours performing services as a real estate salesperson in each of 2008 and 2009.

[7]Petitioners do not contend that Mrs. Ghilardi was a real estate professional during the years at issue.

[8]Mr. Ghilardi generated blank 2008 and 2009 calendars on a Web site and printed them.  He wrote shorthand notations on the calendars and explained the notations in a one-page email he sent to an IRS employee (narrative).

Petitioners did not offer any evidence indicating the amount of time Mr. Ghilardi spent performing services with respect to the rental property.

We have found postevent narratives sufficient to establish taxpayers' participation in an activity when such narratives are supported by credible testimony and other objective evidence. See Assaf v. Commissioner, T.C. Memo. 2005-14; Pohoski v. Commissioner, T.C. Memo. 1998-17; Harrison v. Commissioner, T.C. Memo. 1996-509. However, the materials petitioners submitted and Mr. Ghilardi's supporting testimony are not credible. According to the calendars and narrative Mr. Ghilardi performed the following activities throughout 2008 and 2009: (1) showed rental properties for two hours every Tuesday; (2) viewed new real estate listings for three hours every Wednesday; (3) showed homes to prospective buyers for five hours every Sunday, including the Sunday after Christmas and Easter Sunday; and (4) attended a one-hour meeting every weekday, except on certain Federal holidays. Thus, petitioners ask us to believe that Mr. Ghilardi's weekly real estate activities were identical in nature and duration for two consecutive years, slightly exceeding the 750 hours per year necessary to qualify him as a real estate professional for each year. We decline to do so, especially in the light of the complete lack of corroborating evidence and petitioners' admission that Mr. Ghilardi closed no transactions and earned no income as a real estate salesperson during the

years at issue. The calendars and the narrative do not appear to be a good-faith attempt to reconstruct Mr. Ghilardi's activities for 2008 and 2009; at best, they represent a postevent ballpark guesstimate, the likes of which we have consistently rejected.

We conclude that the method petitioners used to approximate Mr. Ghilardi's participation in real property trades or businesses is not reasonable within the meaning of section 1.469-5T(f)(4), Temporary Income Tax Regs., supra. Petitioners have failed to prove that Mr. Ghilardi spent more than 750 hours performing services in real property trades or businesses during either year at issue. See sec. 469(c)(7)(B)(ii). They have also failed to prove that Mr. Ghilardi spent more time performing services in real property trades or businesses than he spent teaching driver education. See sec. 469(c)(7)(B)(i). Because Mr. Ghilardi does not qualify as a real estate professional under section 469(c)(7), petitioners' rental real estate activity is treated as a per se passive activity under section 469(c)(2).[9]

Even though we have held that petitioners' rental real estate losses were passive, they are able to deduct a portion of those losses under section 469(i). Section 469(i) provides a limited exception to the general rule that passive activity

---

[9]Because petitioners failed to establish that Mr. Ghilardi was a real estate professional for either year at issue, we need not analyze whether he materially participated in the rental real estate activity.

losses are disallowed. A taxpayer who "actively participated" in a rental real estate activity for the taxable year may deduct a loss of up to $25,000 per year related to the activity.[10] Sec. 469(i)(1). The $25,000 maximum allowable deduction is reduced by 50% of the amount by which adjusted gross income (AGI), as modified by section 469(i)(3)(F), exceeds $100,000 and is thus fully phased out when modified AGI reaches $150,000. Sec. 469(i)(3)(A).

In the notice of deficiency respondent conceded that petitioners "actively participated" in the rental real estate activity that gave rise to the claimed losses for 2008 and 2009 and pursuant to section 469(i) allowed them deductions for rental real estate losses of $4,779 for 2008 and $6,263.50 for 2009. However, it is apparent that respondent erroneously calculated the loss petitioners are entitled to claim for each year. The notice of deficiency correctly determined that, in petitioners' case, modified AGI under section 469(i)(3)(F) equals AGI after the application of section 469(c)(2) and (a), plus the deductions allowed under section 219 for qualified retirement contributions, less the taxable amount of Social Security benefits under section 86. See also sec. 1.469-9(j), Income Tax Regs. However, respondent

---

[10]The "active participation" standard is met as long as the taxpayer participates in a significant and bona fide sense in making management decisions or arranging for others to provide services such as repairs. See Madler v. Commissioner, T.C. Memo. 1998-112.

erroneously used total (or gross) income for each year instead of AGI as the starting point in calculating petitioners' allowable deductions. As a consequence, petitioners' $6,000 deduction for qualified retirement contributions for each year was effectively added back twice, thereby overstating modified AGI by $6,000 for each year. The result is that respondent's computations understate the deductions allowable to petitioners under section 469(i) by $3,000 for each year.[11]

Consequently, we conclude and hold that petitioners are entitled to deductions for their rental real estate losses of $7,779 and $9,263 for 2008 and 2009, respectively.

---

[11]For 2008 petitioners' AGI after application of sec. 469(a) and (c)(2) was $142,498 ($88,894 in reported AGI plus $53,604 in claimed losses from passive activities). They claimed a $6,000 deduction for qualified retirement contributions and had $14,056 of taxable Social Security benefits. Thus, their modified AGI for 2008 was $134,442 ($142,498 + $6,000 - $14,056 = $134,442). Accordingly, under sec. 469(i) petitioners were allowed to deduct $7,779 of their rental real estate losses for 2008, calculated as follows: $25,000 - ($134,442 - $100,000) / 2 = $7,779.

For 2009 petitioners' AGI after application of sec. 469(a) and (c)(2) was $140,346 ($93,897 in reported AGI plus $46,449 in claimed losses from passive activities). They claimed a $6,000 deduction for qualified retirement contributions and had $14,872 of taxable Social Security benefits. Thus, petitioners' modified AGI was $131,474 ($140,346 + $6,000 - $14,872 = $131,474). Accordingly, under sec. 469(i) petitioners were allowed to deduct $9,263 of their rental real estate losses for 2009, calculated as follows: $25,000 - ($131,474 - $100,000) / 2 = $9,263.

Accuracy-Related Penalties

Section 6662(a) and (b)(2) imposes a penalty of 20% of an underpayment of tax required to be shown on a return that is attributable to a substantial understatement of income tax. An "understatement" is the excess of the amount of tax required to be shown on a return over the amount of tax shown on the return. Sec. 6662(d)(2)(A). An understatement is substantial when it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production with respect to a taxpayer's liability for penalties. Sec. 7491(c). To satisfy that burden, the Commissioner must offer sufficient evidence to indicate that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If the Commissioner satisfies his burden of production, the taxpayer bears the burden of proving it is inappropriate to impose the penalty because of reasonable cause, substantial authority, or a similar provision. Id.

Respondent determined that petitioners are liable for accuracy-related penalties for 2008 and 2009 because their underpayments of tax for those years are

due to negligence and/or a substantial understatement of income tax.[12]  Petitioners'

disallowed deductions for their rental real estate losses, as redetermined by this

Court, result in income tax understatements that exceed both 10% of the tax required

to be shown on petitioners' returns for those years and $5,000.  Thus, respondent has

met his burden of production.

The section 6662(a) penalty is not imposed on any portion of an underpayment

as to which the taxpayer acted with reasonable cause and in good faith.  Sec.

6664(c)(1).  The determination of whether a taxpayer acted with

reasonable cause and good faith is made on a case-by-case basis, taking into account

all pertinent facts and circumstances, the most important of which is the taxpayer's

effort to assess his or her proper tax liability.  Sec. 1.6664-4(b)(1), Income Tax

Regs.

Petitioners claim they used TurboTax software to prepare their returns and

accurately answered the questions it presented to them.  They argue they are not

liable for accuracy-related penalties because their actions were not "deliberately

negligent" or intentional.  However, a showing that the errors on petitioners' returns

were not intentional would fall far short of demonstrating reasonable cause, which

---

[12]Because we conclude hereinafter that there were substantial understatements of income tax on petitioners' 2008 and 2009 returns, we need not address whether petitioners were also negligent.  See sec. 6662(b).

concerns whether a good-faith effort to comply was made. Petitioners claimed losses of $53,604 and $46,449 for 2008 and 2009, respectively, with respect to the rental real estate activity--amounts approximately half of their reported income for each year. At trial Mr. Ghilardi admitted that he did not consult with anyone regarding how to report the results of the rental real estate activity and acknowledged that he was unaware of the passive activity loss rules until the IRS selected petitioners' returns for examination. Further, petitioners provided no evidence of the information that they entered into TurboTax, a preliminary showing that would be required to decide whether the software program is in any way at fault for petitioners' underpayments. See Anyika v. Commissioner, T.C. Memo. 2011-69; Paradiso v. Commissioner, T.C. Memo. 2005-187.

Given the magnitude of the claimed losses, we conclude that petitioners have failed to show that they made a reasonable effort to assess the proper treatment of their rental real estate losses. Accordingly, they did not have reasonable cause for the underpayments for either year. We therefore sustain respondent's determination of the accuracy-related penalties for 2008 and 2009.

To reflect the foregoing,

Decision will be entered

under Rule 155.