Elco Construction Company v. Commissioner. Samuel Cinman v. Commissioner.
Elco Constr. Co. v. Commissioner
Docket Nos. 91030, 91031.
United States Tax Court
T.C. Memo 1965-259; 1965 Tax Ct. Memo LEXIS 69; 24 T.C.M. (CCH) 1406; T.C.M. (RIA) 65259; September 30, 1965
Abraham Teitelbaum, for the petitioners. Helen A. Viney, and Donald W. Geerhart, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: In statutory notices of deficiencies mailed to the petitioners on November 9, 1960, the Commissioner determined additions to the income tax due from the petitioners as follows: Additions to Tax -
Sec. 6651(a)
Sec. 6653(a) [1]
Year
I.R.C. 1954
I.R.C. 1954
Elco Construction Company
Fiscal Year
$ 59.32
ended 6/30/55
Fiscal year
$1,439.64
287.93
ended 6/30/56
Samuel Cinman
1954
965.75
193.15
*70 In separate petitions filed with this Court, the petitioners contested the above determinations and also put in issue deficiencies and additions to tax which had previously been assessed by the respondent, pursuant to signed Forms 870. The assessments against the individual petitioner were made on September 16, 1960, and those against the corporate petitioner were made on September 7, 1960. These additional amounts, raised in the petitions, are as follows: Additions to Tax
Sec. 294(d)(1)(A)
Sec. 6651(a)
Sec. 6653(a)
Year
Deficiency
I.R.C. 1939
I.R.C. 1954
I.R.C. 1954
Elco
Fiscal year
$ 1,906.04
$ 95.30
Constructi
on Co.
ended
6/30/55
Fiscal year
14,409.97
$3,602.49
720.49
ended
6/30/56
Samuel
1954
34,201.56
$3,153.66
8,550.39
1,710.08
Cinman
The questions thus presented are: (1) whether the petitioners properly put in issue amounts which had previously been assessed by the respondent; (2) whether the petitioners regularly used a method of accounting which clearly reflected their income, and if *71 not, whether an accrual method of accounting as here applied by the respondent clearly reflected the income of each petitioner; and (3) whether the petitioners are liable for the negligence and failure to file penalties in the additional amounts determined by the Commissioner. Some of the facts have been stipulated and are so found. Petitioner, Samuel Cinman (hereinafter referred to as Cinman, or as the individual petitioner) resided in Lincolnwood, Illinois. He did not file a Federal income tax return for the year 1954. For years previous to 1954, he could not remember whether he had filed returns. Prior to the year 1954, Cinman operated a sole proprietorship under the name of Kenton Construction Company (hereinafter referred to as Kenton). Kenton's principal business was the repair or remodeling of business and residential property. Kenton filed no Federal income tax returns for the years 1953 or 1954. Internal Revenue Agent Guy Parker (hereinafter referred to as Parker) was assigned to audit Cinman's records. For the year in issue Parker determined a deficiency in tax and additions to tax as follows: Additions to Tax
Sec. 294
Sec. 6651(a)
(d)(1)(A)
and 6653(a)
I.R.C.
I.R.C.
Year
Deficiency
1939
1954
1954
$34,201.56
$3,153.66
$10,260.47
*72 On March 25, 1960, a Form 870, waiving restrictions on assessment and collection of the deficiencies set out in Parker's audit, was signed by Cinman. It was filed with the district director of internal revenue at Chicago, Illinois, on March 29, 1960. After the Form 870 had been signed and filed and assessment made, the district director concluded that the amount of the penalties had been erroneously computed and the statutory notice involved in this case was then sent to Cinman setting forth additional penalties. Petitioner, Elco Construction Company (hereinafter referred to as Elco), was incorporated under the laws of the State of Illinois on June 22, 1954. Its principal place of business during the fiscal years ending June 30, 1955, and June 30, 1956, was Chicago, Illinois. Elco was in the business of constructing residential, commercial and institutional buildings. Elco filed a Federal income tax return for the fiscal year ending June 30, 1955, with the district director of internal revenue, Chicago, Illinois. Elco did not file a return for the fiscal year ending June 30, 1956. Agent Parker was also assigned to audit the return and records of Elco. He determined deficiencies *73 for the years before the Court as follows: Additions to Tax
Sec.
Sec.
6651(a)
6653(a)
I.R.C.
I.R.C.
Deficiency
1954
1954
Fiscal year end-
ing 6/30/55
$ 1,906.04
$ 95.30
Fiscal year end-
ing 6/30/56
14,409.97
$3,602.49
720.49
On March 28, 1960, a Form 870 waiving restrictions on assessment and collection of the deficiencies set out in the above audit, was signed by A. Robinson, Elco's secretary; it was filed with the district director of internal revenue for Chicago, Illinois, on March 29, 1960. After this form had been signed and filed and assessment made, the district director concluded that the amount of the penalties had been erroneously computed. The statutory notice involved in the instant case was then sent to Elco setting forth the additional penalties. Before Elco was incorporated, Cinman had been in the construction business for more than 30 years. When Elco was formed, Cinman turned over to it Kenton's assets which consisted of contracts in progress, inventory, new contracts, accounts receivable, and accounts payable. Even though one of the purposes of incorporating Elco was to have it assume all of Kenton's *74 business, Kenton continued to accept new contracts. Elco maintained an inventory but its exact size was impossible to determine because it included items from work in progress. The rental on the garages used to store Elco's materials and supplies ranged from $12 to $72 per month. Kenton also used inventories, accounts receivable, accounts payable, and work in progress inventories in its business. The value of these inventories cannot be determined from the record herein. The records of Elco were so inadequate that Parker was unable to determine what system of accounting the company used. On its first Federal income tax return Elco did not indicate an election of a method of accounting for reporting income. At best the system of accounting used in making out Elco's return was a mixed or hybrid one. Although the records of Elco were admittedly incomplete, Parker was able to reconstruct Elco's income for the years before the Court. In making this computation, Parker had access to Elco's original records. These records were not introduced into evidence, but Cinman did produce ledgers which he kept for Elco. These ledgers were incomplete, and in addition entries were often made *75 from memory and long after the event. Parker tried unsuccessfully to reconstruct Elco's income for the years before the Court by reference only to the exhibits introduced into evidence. The following schedules reflect Parker's reconstruction of Elco's income. (Revenue agent's report refers to Parker's audit which was based on Elco's original records, and exhibits 5 and 9 refer to the bookkeeping ledgers which were introduced into evidence.) ELCO CONSTRUCTION COMPANY
Fiscal Year 7/1/54-6/30/55
Accrual
Cash
Item
Per Return
Per R.A.R.
Per Exh. 5
Per Exh. 9
Per Audit
Net Sales
$34,136.85
$ 45,912.84 a
$31,258.84
$34,249.98
$40,314.84
Cost of Goods
15,437.33
27,084.59
Incomplete
Incomplete
25,385.77
Sold
Gross Profit
$18,699.52
$ 18,828.25
$14,929.07
Expense
18,274.54
8,520.32
Incomplete
Incomplete
8,520.32
Deduction
Taxable
$ 424.98
$ 10,307.93
$ 6,408.75
Income
N.O.L.
0
$ 3,529.50
0
Carryback
6/30/58-59
Corrected
$ 424.98
$ 6,778.43
$ 6,408.75
Taxable
Income
Income Tax
$ 127.49
$ 2,033.53
$ 1,922.62
Penalties: Sec. 6651
Sec. 6653
154.62
96.13
Total
$ 127.49
$ 2,188.15
$ 2,018.75
ELCO CONSTRUCTION COMPANY
Fiscal Year 7/1/55-6/30/56
Net Sales
None filed
$123,001.62 b
$45,099.30
$39,898.30
$89,374.59
Cost of Goods
None filed
56,102.01
Incomplete
Incomplete
43,715.81
Sold
Gross Profit
None filed
$ 66,899.61
$45,658.78
Expense
None filed
17,537.08
Incomplete
Incomplete
17,312.08
Deduction
Taxable
None filed
$ 49,362.53
$28,346.70
Income
N.O.L.
None filed
$ 11,074.13
0
Carryback
6/30/58-59
Corrected
None filed
$ 38,288.40
$28,346.70
Taxable
Income
Income Tax
None filed
$ 14,409.97
$ 9,240.28
Penalties: Sec. 6651
None filed
5,042.13
2,772.08
Sec. 6653
None filed
1,008.42
Total
None filed
$ 20,460.52
$12,012.36
*76 Cinman individually kept no records. When Parker reconstructed Cinman's income for 1954, he had access to Elco's original records. Parker reconstructed Cinman's taxable income for 1954 under both an accrual and the cash methods of accounting. The following schedule makes the same comparisons for Cinman as were made for Elco: SAMUEL CINMAN, D/B/A KENTON CONSTRUCTION
1954
Accrual Method
Cash Method
Item
Per Return
Per R.A.R.
Per Exh. 9
Per Audit
Total Receipts
None filed
$125,382.55
$70,068.17
$80,332.25
Cost of Goods Sold
None filed
49,287.20
50,409.33
48,558.12
Gross Profit
None filed
$ 76,095.35
$19,658.84
$31,774.13
Expense
None filed
11,004.20
7,159.40
7,759.40
Net Profit
None filed
$ 65,091.15
$12,499.44
$24,014.73
N.O.L. Carryback, 1956
None filed
4,962.69
0
0
Net Profit
None filed
$ 60,128.46
$12,499.44
$24,014.73
Dividends
None filed
757.36
0
757.36
Net Profit
None filed
$ 60,885.82
$12,499.44
$24,772.09
Dividend Exclusion
None filed
$ 50.00
$ 50.00
Standard Deduction Separate
None filed
500.00
500.00
Return
One Exemption
None filed
600.00
600.00
$ 1,150.00
$ 1,150.00
Taxable Income
None filed
$ 59,735.82
$23,622.09
Income Tax
None filed
$ 34,201.56
$ 9,337.03
Penalties: Sec. 6651
None filed
11,427.85
2,801.11
Sec. 6653
None filed
Sec. 294(d)
None filed
3,153.66
863.69
Total
None filed
$ 48,783.07
$13,001.83
*77 These schedules establish conclusively that each petitioner had taxable income under either a cash or an accrual method of accounting for the years before the Court. Early in 1960 Parker examined what books and records the petitioners had. On the basis of these records Parker reconstructed the income of Cinman for 1954 and Elco for the fiscal years 1955 and 1956. In arriving at his conclusions he had access to contracts, sales and purchase invoices, cancelled checks and bank deposits. Parker computed deficiencies in income tax and additions to tax for Elco for the years before the Court. An officer of Elco signed a Form 870 agreeing to waive restrictions on the assessment and collection of these deficiencies. The district director assessed these deficiencies against Elco on September 7, 1960. Parker also computed a deficiency in Cinman's income tax for 1954 and additions to the tax due from him for that year. Cinman signed a Form 870, and these deficiencies were assessed against him on September 16, 1960. After the assessments against Elco and Cinman had been made, the respondent discovered that the penalties had been erroneously computed. The correct amount of the penalties *78 had been understated because the petitioners had been allowed carry-back net operating loss deductions, thereby reducing the base on which the penalties were computed. The penalties were then recomputed and the statutory deficiency notices of November 9, 1960, set out only the amounts of the additional penalties. In petitions filed with this Court Elco and Cinman have also put in issue the deficiencies which had previously been assessed pursuant to the two Forms 870. [2]
The first issue for our decision is whether the petitioners have properly put in issue the amounts previously assessed by the respondent. After a notice of deficiency has been sent to a taxpayer and a petition filed by him, this Court has jurisdiction to determine if a deficiency exists, and if so, its amount. Section 6214(a). In the instant case the statutory notices were sent to *79 the petitioners on November 9, 1960, and the petitioners filed petitions putting in issue the deficiencies which had previously been assessed pursuant to the signed Forms 870. It is clear that the petitioners properly put these amounts into issue. Section 6214(a) [3] gives this Court express statutory authority to determine the extent of any deficiency for a given year even though the amount so determined is greater than the amount set out in the statutory notice. The legislative intent is to settle in one proceeding the total tax liability of any taxpayer for a given year. In Ross Bowman, 17 T.C. 681 (1951), the respondent sent a statutory deficiency notice, and later, on default of any petition, assessed deficiencies in the income tax of the petitioner. Still later the respondent determined an increased deficiency together with penalties for the same taxable year. The second statutory deficiency notice covered only the additional deficiency and penalties and made no reference to the amounts which had been previously assessed. In his petition the taxpayer contested the earlier assessments. We allowed the taxpayer to put those amounts into issue and denied an attempt *80 by the respondent to limit the trial to the amounts set out in the second statutory notice. The only distinction between Bowman and the instant case is that here the assessments were made pursuant to the filing of the waiver forms, which forms merely freed the respondent from the obligation of issuing notices of deficiency before making assessments. The forms were not a closing agreement, and neither petitioner confessed liability for the amounts determined to be due. This is a distinction without a difference. The second issue for our decision is whether the respondent improperly changed the petitioners' method of accounting. *81 In reconstructing the income of the petitioners for the years before the Court, Parker made separate computations using both the cash receipts and an accrual method of accounting. The respondent assessed the deficiencies in income tax and computed the penalties due on the basis of the latter. The petitioners do not seem to deny the accuracy of Parker's reconstruction of their income for the years in issue, but contend that the respondent's computation of their income tax liability on an accrual rather than a cash basis amounts to an improper change in their method of accounting. The petitioners argue that they have "always" been on a cash receipts method of accounting, and that Parker was exceeding his authority when he changed them from a cash to an accrual method. The petitioners further argue that an accrual method cannot properly reflect their true income because it would include in income contracts which may later prove to be uncollectible in part. The respondent contends that neither petitioner had adopted any method of accounting, and consequently no change in their method of accounting was made. Respondent also contends that assuming, arguendo, that the petitioners had *82 adopted cash receipts methods of accounting, that such methods did not properly reflect their incomes. Furthermore, the respondent argues that the accrual methods used by him properly reflected their incomes because the petitioners were in a business requiring the use of inventories. We think the record, the applicable sections of the Code, and the case law abundantly support the respondent's position. Section 446 of the Code requires that taxable income be computed under the accounting method regularly used by the taxpayer in keeping his books, but if no method has been regularly used or if the method used does not clearly reflect income, then the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. In determining what method of accounting has regularly been used by the taxpayer reference is normally made to the income tax returns filed by the taxpayer or his books and records. In the case of the corporate petitioner the record shows that no method of accounting was designated on the only tax return Elco filed. On page 3 of such return, under "Additional Information Required," question *83 8 reads: 8. Check whether this return was prepared by the (a) [*] cash method, (b) [*] accrual method, or (c) [*] other. If other method used, explain… All of the boxes were left blank. In answer to question 9, "Did the corporation use inventories at the end of the taxable year?" the word "YES" was typed in, but the rest of the question was left blank. The evidence does not support Elco's contention that it always kept its books and records on a cash basis. In fact the entire record is extremely vague about what records were kept for Elco. Cinman introduced into evidence some books in which he had made entries from check stubs, bank deposit statements, and sales invoices, but these entries were made anywhere from one day to five weeks after they were received. Some of the entries were made from memory. The original records of Elco were not introduced into evidence. Parker reconstructed Elco's income for the years before the Court by reference to the original documents. He concluded that no method of accountning was discernible. Elco's books for fiscal 1955 were kept by an accountant named Goldstein who might have confirmed Cinman's averrals that Elco's books *84 were kept on a cash receipts basis. Goldstein was not called as a witness at the trial nor was his absence explained. In view of petitioner's burden of proof, we must assume that his testimony would not have been helpful. There follows a portion of Cinman's testimony regarding his "method" of keeping Elco's books: I probably didn't make myself clear, your Honor. The method I have here is a case of the cash that would come in, both cash and payment, whatever we received for work that was done and the expenditures that were made by checks. However, it does not show the expenditures that were made by cash and petty cash that could be substantial because in many instances, we would - in some cases, we would apply for cash on a C.O.D. basis and pay for - or lay out cash to the man and get their receipts in return, where ordinarily, we'd pay them by check and have that as a receipt. In my opinion that was the simplest manner of keeping track of the receipts and disbursements. Cinman has not made himself "clear" as to what method of accounting Elco used in keeping its books. The principles set forth in the above dissertation do not conform to any recognized form of accounting. Neither *85 the single tax return filed by Elco nor the books of Elco admitted into evidence warrant a conclusion that Elco conducted its business on a cash receipts method of accounting. As to the individual petitioner the situation is slightly different. Cinman did not file a return for the year in issue, and he could not remember whether he had ever filed a return prior to 1954. Cinman did not produce any copies of a single return he had ever filed on a cash basis. The record is even less clear concerning the accounting method he used in keeping his records. He constantly referred to his method as the "cash" method, yet, he also testified that he turned over the "work in progress, inventory, whatever he had there, or any new contracts or any business - monies that were due accounts payable" from Kenton, his sole proprietorship, to Elco. Cinman stated that he gave all available records of his and Elco's to Parker for his examination. Parker testified as follows: Q. Did you find any evidence in Mr. Cinman's records, books of account, bank statements, what have you, that he had been reporting income on a cash basis in the past? A. No, I did not. The record compels the conclusion that *86 Cinman did not keep his books and records on a cash receipts method of accounting. Even if we assume, arguendo, that either Elco or Cinman had apodted a method of accounting, such assumed method did not clearly reflect the income of either petitioner. Parker, who examined all of the available records of the two taxpayers, was unable to determine what method of accounting was used by either of them, and the record herein is not helpful on this point. Parker testified that the records of Elco were "incomplete and erroneous in a good many respects * * *." In his opinion the books that were introduced into evidence were not adequate to make out an income tax return for Elco. Having carefully examined the entire record, we have decided that both of these conclusions are accurate and find them as facts. In fact the books covered only part of the period for the fiscal year in which the one return was filed by Elco. There were many misclassifications of income and deductions. Cinman, individually, kept no records. He relied upon the books of Elco to show his income. Prior to the incorporation of Elco, Cinman conducted his business through Kenton, a sole proprietorship. Yet Elco did not *87 take over all the business of Kenton when it was incorporated in 1954. Kenton completed the contracts it had in process and even accepted new contracts after the incorporation of Elco. Cinman did not file returns for 1953 or 1954, yet Kenton did have income during those years. Both petitioners argue that they were using, during the years before the Court, a method of accounting which clearly reflected their income. This method was such that (excepting Elco's fiscal 1955) apparently the petitioners thought they had no income and, therefore, should not file any returns. Parker's reconstruction of their incomes shows conclusively that both petitioners had substantial income for years before the Court. If the petitioners cannot determine from their own records whether they have income, it follows that their accounting methods are inadequate and respondent's disregard was justified. Cf. V.T.H. Bien, 20 T.C. 49 (1953). The respondent's determinations for the years in question are further justified because the use of inventories for materials and supplies is necessary in the construction business [4] and the record shows that Kenton, Cinman's sole proprietorship, and Elco *88 regularly used inventories in the course of their business. We conclude that the respondent had explict statutory authority under section 446(b) [5] to compute income on an accrual basis under the circumstances here present. *89 Petitioners also argue that accrual methods distort their incomes because some of Kenton's and Elco's accounts receivable proved to be uncollectible in later years, but this is not an infirmity in the Commissioner's application of accrual methods. Consistent application, over a reasonable period of time would clearly reflect the income of these petitioners. If in fact accrued accounts receivable were not ultimately collected, then the petitioner concerned would be entitled to a deduction in the year of proven uncollectibility. The third issue is whether the penalties for failure to file and for negligence in the amounts asserted in the statutory notices are proper. Neither Elco nor Cinman in their petitions or at any time since have argued that the penalties were inaccurately computed. Their sole contentions have been that they owed no tax at all because the respondent improperly required changes in their methods of accounting. Cinman has failed to show that his failure to file an income tax return for 1954 was reasonable. The record refutes his argument that he had no income for that year. Elco did not produce its accountant or otherwise support its argument that it had no *90 taxable income for the fiscal year 1956. In these circumstances the mere failure to file a return is sufficient grounds for imposition of the penalty. Fawn Fashions, Inc., 41 T.C. 205 (1963); Parkchester Beach Club Corp. v. Commissioner, 335 F. 2d 478 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court; James F. Edwards, 37 T.C. 1107 (1962). As to the penalties asserted under section 6653(a) (Negligence or Intentional Disregard of Rules and Regulations) neither petitioner has introduced any evidence overcoming the presumptive correctness of the respondent's determination. It follows that the penalties must be sustained. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all Code references are to the Internal Revenue Code of 1954.↩
a. Total deposits listed in Exhibit 5 are $42,778.29. Many items of deposit are not classified. ↩
b. Total deposits in Elco accounts (as listed in Exhibit 5, were $81,276.08. Elco receipts for January, 1956, were deposited in checking account of Elsie Cinman, First National Bank, Skokie, Illinois. Many items of deposit listed in Exhibit 5 are not classified.↩
2. In their petitions, the taxpayers also attempted to put into issue years not included in the statutory deficiency notices. This Court has jurisdiction over only those taxable years subject to a statutory deficiency notice. Robert J. Dial, 24 T.C. 117 (1955); F. A. Gillespie Trust, 21 T.C. 739↩ (1954).
3. SEC. 6214. DETERMINATIONS BY TAX COURT. (a) Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax. - The Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or addition to the tax should be assessed, if claim therefor is asserted by the Secretary or his delegate at or before the hearing or a rehearing.↩
4. Treasury Regulation 1.446-1 provides in part as follows: (c) Permissible Methods * * *
(2) Special Rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph. The petitioners have not shown, and the record will not support a finding, that they are entitled to the special treatment authorized by subdivision (ii) under which the Commissioner may authorize a taxpayer to continue or adopt some other method which clearly reflects income.↩
5. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. * * *
(b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.↩